GEORGE HOMRIGHAUSEN *et al.* v. GEORGE KNOCHE *et al.*
#### No. 10265.

LEGISLATIVE JOURNALS—*leaving it doubtful whether constitutional majority voted for bill, enrolled bill conclusive of constitutional passage.* Chapter 111 of the Laws of 1891, relating to descents and distributions, was duly authenticated by the legislative officers, approved and signed by the Governor, deposited with the Secretary of State, and published as a valid enactment. Its validity being challenged on the ground that the required affirmative votes were not cast in favor of the bill, the journal was examined, and the entries therein respecting the passage of the act were found to be ambiguous and conflicting. Some of the recitals and entries indicated that a constitutional majority had voted for the bill, while others indicated the contrary. As the enrolled statute is strong evidence of the regularity of the passage of the act and of its validity, and conclusive evidence of such regularity and validity unless the journal shows clearly, conclusively, and beyond all doubt, that the act was not passed regularly and legally, it is held that the act in question is not impeached or overthrown by the entries in the journal.

Error from Johnson District Court. Hon. John T. Burris, Judge. Opinion filed November 6, 1897. *Reversed.*

*B. F. Simpson* and *John S. Beeson*, for plaintiffs in error.

*F. R. Ogg, S. T. Seaton* and *Parker & Hamilton*, for defendants in error.

JOHNSTON, J. This was an action to obtain a partition of a tract of land in Johnson County, which, at the time of her death, was owned by Elizabeth Barger, who died intestate in January, 1894. Each of a number of persons claimed an interest in the land under the Law of Descents and Distributions, and to settle the conflicting claims and divide the land among those legally entitled to share in it, was the purpose of this action. The main dispute among them was, whether their rights should be determined by the rule prescribed in chapter 111 of the Laws of 1891, or under the statute which that chapter purports to repeal.

The plaintiffs in error, who were brothers and sisters of Elizabeth Barger, contended that the act of 1891 controlled; while the defendants in error contended, and the trial court held, that the act of 1891 had not been legally enacted, and that therefore the earlier statute was in force. It is contended that, if the act of 1891 is a valid enactment, the plaintiffs in error must prevail and the judgment of the District Court must be reversed.

It is insisted that, on the final passage, a constitutional majority of the House of Representatives did not vote in favor of the act. To sustain the claim, attention is called to the House journal. It recites that the bill was duly passed, but it appears that only sixty-two names are entered on the journal as having voted "aye," being one less than a constitutional majority. The entries upon the journal (page 1033), respecting the final passage of the act by the House, are somewhat obscure and conflicting. There is a recitation that the act was read the third time, and, the question being—"Shall the bill pass?" the roll was called, with the following result: Yeas, 64;

Nays, 7. Then follows a list of the members said to have voted in the affirmative, sixty-two in number; but at the end is the statement: "Total 64." At the end of a list of the names of those voting in the negative is the statement: "Total 7." Immediately following the list is the declaration: "A constitutional majority having voted in favor of the passage of the bill, the bill passed, and the title was agreed to." Is this record sufficient to impeach and overthrow a duly enrolled, authenticated, and published statute? The Legislature, it is true, is required to keep and publish a journal of its proceedings, and the yeas and nays are required to be taken and immediately entered upon the journal upon the final passage of every bill; but these entries are not necessarily conclusive. The enrolled bill, duly authenticated, is evidence, of the highest character, of legislative action. In many of the States it is conclusive evidence that all the constitutional requirements necessary to the passage of an act have been complied with. In this State, however, where journals of the legislative proceedings are required to be kept, they may be consulted as to whether a published act was actually passed. In determining what was the action of the Legislature on any particular measure, the validity of which is challenged, the court may "take judicial notice of what our books of published laws contain, of what the enrolled bills contain, of what the journals of the Legislature contain, and indeed of everything that is allowed to affect the validity of any law, or that is allowed to affect or modify its meaning in any respect whatever." *Division of Howard County*, 15 Kan. 213. To measure the value and force of the information and the evidence so obtained, it has been held that the enrolled statute is very strong presumptive evidence of the regularity of the passage of the act and of its validity, and is

conclusive evidence of such regularity and validity unless the journals of the Legislature show clearly, conclusively, and beyond all doubt, that the act was not passed regularly and legally.

"If there is any room to doubt as to what the journals of the Legislature say; if they are merely silent or ambiguous; or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid; then it is the duty of the courts to hold that the enrolled statute is valid. But in this State, where each House is required by the Constitution to keep and publish a journal of its proceedings, we cannot wholly ignore such journals as evidence." *State, ex rel., v. Francis*, 26 Kan. 724.

Does the journal of the House show clearly, conclusively, and beyond all doubt, that the act was not legally passed? Some parts of the journal support the enrolled bill, and show that it was regularly and legally enacted, while another part of the journal indicates that it did not have the requisite number of affirmative votes. The journal, therefore, does not make that clear and conclusive showing of invalidity which would overthrow the evidence furnished by the enrolled bill. The inconsistencies in the journal, if we look at that alone, leave room for doubt as to what the legislative action was on the bill. On the other hand, we have the enrolled bill, duly attested by the sworn officers of the Legislature. It has been authenticated by the chief officers of each House and approved and signed by the Governor; all affirming the regularity and validity of the enactment. It has been deposited with the Secretary of State, published and accepted as a duly authenticated statute. The journals, we know, are hurriedly and sometimes carelessly made. The reading of the same for correction and approval from day to day is frequently dispensed with, and therefore it is not difficult to account for am-

biguities and inaccuracies that may be found therein. In this instance, the manuscript journal differs from the printed journal as to who voted for and against the measure. If we were permitted to go further, and look at the original roll-call on the bill, which was preserved and which was used by the clerk in making up his journal, we would see a different record than is disclosed by either the manuscript or printed journal. If it was evidence, it would appear that the recitation in the journal that there were sixty-four affirmative votes was correct. It may be doubted, however, if the roll call can be regarded as a part of the journal; and hence we do not rest our conclusion to any extent on what is shown by it. The manuscript journal, which we have examined, shows that the names of all the members of the House were entered and printed upon it; and the clerk, in making a record of the votes, has attempted to draw a pen-mark across the names of those who voted against the bill and those who were absent or not voting. The names of those supposed to have voted for the measure were left unscratched. Below the record so made, the clerk wrote out at length the names of those who voted against the bill. It thus appears that, originally, there were more than sixty-four names entered and printed on the affirmative list; and it may have been that the clerk scratched out of the names so entered some of those who voted in favor of the bill. At any rate, there were sixty-four affirmative votes counted when the final roll call was had. The Speaker announced that sixty-four votes were cast in favor of the bill, and a like record was made by the docket clerk. Finally, the statement was recorded in the journal that a constitutional majority had voted for the bill and that it had passed. These entries all concur with the evidence furnished

by the enrolled bill, and are not to be overcome by such a record of the votes cast as was made in this instance. Applying the rule announced in *The State, ex rel., v. Francis,* supra, we readily conclude that the journal does not impeach the validity of the act, and that it may be explained upon the hypothesis that the statute was legally enacted and is valid. *Commissioners v. Higginbotham,* 17 Kan. 62 ; *In re Vanderberg,* 28 id. 243 ; *Weyand v. Stover,* 35 id. 545 ; *The State, ex rel., v. Robertson,* 41 id. 205. The judgment of the District Court will, therefore, be reversed and the cause remanded for further proceedings.

Allen, J., concurring.

Doster, C. J., having been of counsel in a similar case, not sitting.