## *In re* GEORGE A. TAYLOR.

### No. 11249.

1. EVIDENCE — *Legislative Journals* — *Banking Act.* While legislative journals as public records may be examined for the purpose of ascertaining whether a statute, parts of which they affirmatively show to have been duly passed, was in reality enacted as a whole, yet, where the evidence of its non-enactment as a whole consists only of inferences, though strong, derivable from silence and omissions of statement from the journal, they cannot be held sufficient to overcome the presumptive evidence of the due enactment of the statute furnished by its enrolment, its attestation by the presiding officers of the two houses, and its approval by the governor.

2. ——— *Presumptive Evidence of Enactment of Statute* — *Banking Act.* When a journal of the house of representatives shows that a pending measure designated as "the substance of" or the "subject-matter of" house bill 705 was considered, various amendments to it proposed and adopted, but that the bill as amended, when considered for final passage, was rejected; and also shows that at a subsequent date a bill designated as "house bill 705," not as its "substance" or "subject-matter," was considered and upon final vote passed, and thereupon messaged to the senate, which body likewise passed it; and the journal does not state whether, upon consideration in the house, any amendments to house bill 705 were made, but inferentially shows by its silence upon the subject that none was made, but the existing statute contains the amendments proposed and made to the measure designated as the "substance" or "subject-matter" of house bill No. 705: *Held*, that the inference derived from the silence of the journal upon the subject that the amendments at one time made to the measure called the "substance" or "subject-matter" of house bill 705 and then rejected upon final vote, together with the measure itself, were not subsequently made to house bill 705 *eo numero* when upon final consideration, or were not in the first instance parts of such bill, is not strong enough to overcome the presumptive evidence of the due enactment of the statute as it appears among the enrolled bills, attested by the presiding officers of the two houses, and approved by the governor.

Original proceedings in *habeas corpus.* Opinion filed December 10, 1898. Petitioner remanded.

| | |
|---|---|
| 60 | 87 |
| 60 | 96 |
| 60 | 87 |
| f61 | 97 |
| 60 | 87 |
| 64 | 480 |
| 64 | 485 |
| 64 | 487 |
| j64 | 500 |
| 60 | 87 |
| f74 | 826 |
| 74 | 827 |
| 60 | 87 |
| 75 | 133 |
| 75 | 135 |
| 75 | 138 |

*C. W. Trickett*, for petitioner.

*L. C. Boyle*, attorney-general, *S. C. Miller*, county attorney, and *I. F. Bradley*, for The State.

The opinion of the court was delivered by

DOSTER, C. J. : This is an application for a writ of *habeas corpus*. The petitioner, George A. Taylor, was charged in the district court of Wyandotte county with having received, as the cashier of a bank, deposits of money in the bank when it was to his knowledge insolvent and in a failing condition. The date of the offense charged was August, 1896. At the September term, 1897, he was tried, found guilty, and sentenced to two years' confinement at hard labor in the penitentiary. The offense was prosecuted and conviction had under chapter 43, Laws of 1891, being the act of that year for the organization and regulation of banks. The ground of the petitioner's application is that this statute was never constitutionally passed by the senate and house of representatives. It is claimed that, as signed by the president of the senate and the speaker of the house, approved by the governor, and enrolled in the office of the secretary of state, it contained matter which was never enacted by either house of the legislature.

The history of the measure known as chapter 43, Laws of 1891, as shown by the legislative journals, is as follows : A bill was introduced in the house upon the subject of banking, and was designated "house bill No. 705." About the same time a bill with identically the same title, and upon the same subject, but said to contain provisions somewhat different in character, was introduced in the senate, and was designated "senate bill No. 10." House bill No. 705

was read a first and a second time, and was then referred to a committee. Senate bill No. 10 was read three times, passed by the senate, messaged to the house, and placed upon the house calendar. When this bill was called for consideration in committee of the whole house, all after the enacting clause was stricken out, and house bill No. 705 was substituted in its place. The measure for consideration then became in reality house bill No. 705 under the name of "senate bill No. 10." To this bill a number of amendments in important particulars were proposed and adopted, but the bill, together with the amendments, when called for final vote, was defeated. The next day original house bill No. 705 was ordered from the committee to which it had been referred, and was passed as introduced, without amendment, so far as the journal shows. It was thereupon messaged to the senate, and likewise passed through that body without amendment, so far as the journal shows. We do not know what the provisions of house bill No. 705 were. It was not preserved in the legislative journals, and hence we are unable to compare it with the measure which appears as chapter 43, Laws of 1891. It would appear, however, that whatever the provisions of original house bill No. 705 were, they were passed by both house and senate, and, inferentially, were passed, without amendment by either body. The amendments proposed and adopted in the house to house bill No. 705 under the name of "senate bill No. 10," and which together with the bill itself were, as before stated, rejected upon final vote, are set out in the house journal. We are therefore enabled to know what they were. Upon reading chapter 43, Laws of 1891, we find provisions identical in language with these rejected amendments, showing

that they became by some means parts of the statute enacted by the two houses, attested by the legislative officers, and approved by the governor. As to whether these amendments, though once rejected in the house, were not again proposed to the bill as it finally passed that body the journal is silent, so far as any express statement is concerned. We have no evidence upon the subject except two inferences, one of which is that the bill was not amended because the journal makes no mention of amendments, and the other of which is that it may have been amended, because the identical matter which appears as parts of chapter 43, Laws of 1891, had been on a previous day, when the bill was under consideration under the name of "senate bill No. 10," proposed and adopted as parts of that measure, although subsequently and for the time being rejected together with the original bill itself. This evidences the fact of a majority sentiment among the members in favor of these amendments.

Before proceeding to a consideration of the question in the case it is important to make an addition to the foregoing summarized history of the measure in question which materially weakens the inference first above stated. It has been said that upon consideration in the house of senate bill No. 10, house bill No. 705 was substituted for it, and that to house bill No. 705, under the name of "senate bill No. 10," the amendments in question were proposed and made. Looking to the precise language of the journal, this statement is not correct. The report covering the subject, made by the chairman of the committe of the whole house, reads as follows :

"Mr. Speaker : The committee of the whole has had under consideration the following bills : . . .

"Also, substitute for senate bill No. 10, 'An act pro-

*In re* Taylor.

viding for the organization and regulation of banks,' and direct me to report the same back to the house and recommend that all after the enacting clause be stricken out, and the substance of house bill No. 705 on the same subject be inserted in lieu thereof, and recommend its passage, subject to amendment and debate.''

The memoranda reports of the action by the house upon the measure in question read as follows :

'' Substitute for senate bill No. 10, An act providing for the organization and regulation of banks. All after enacting clause stricken out and the subject-matter of house bill No. 705 substituted, was on third reading, subject to amendment and debate.''

'' Substitute for senate bill No. 10, An act providing for the organization and regulation of banks, was amended by striking out all after enacting clause and inserting subject-matter of house bill No. 705, and was read a third time.''

It will thus be seen that house bill No. 705 was not substituted for consideration in lieu of senate bill No. 10, but that the ''*substance* of house bill No. 705'' or the ''*subject-matter* of house bill No. 705'' was so substituted for consideration. At all other places in the journal the measure known as '' house bill No. 705 '' is referred to *eo numero*, but in the instances mentioned it is the ''*substance*'' or the '' *subject-matter* '' of house bill No. 705 to which amendments were proposed and made, implying thereby that it was an epitome or modified draft of house bill No. 705 which was substituted for senate bill No. 10, and to which the amendments in question were proposed and made.

The question now arises, Is the inference to be drawn from the silence of the journal upon the subject that original house bill 705, when put upon consideration for its final passage, was not amended

by the insertion of the matter which appears in chapter 43, Laws of 1891, or did not in the first instance contain such matter, sufficient to overcome that presumptive evidence of the due enactment of all its parts which is furnished by the enrolled bill, the signatures of the presiding officers of the two houses, and the approval of the executive? This question does not seem to us difficult to answer. While the journals of the two houses may be examined for the purpose of ascertaining whether the legislative branch has expressed its will in accordance with constitutional requirements, yet a legislative measure which has taken upon itself all the forms and appearances of verity which are involved in its enrollment in the office of the secretary of state, its certification by the president of the senate and speaker of the house and its approval by the governor, may not be impeached by the legislative journals except when the proof furnished by them is of the clearest, strongest and most undoubted character. This has been twice heretofore declared in the language now employed. (*The State, ex rel., v. Francis, Treas.*, 26 Kan. 724 ; *Homrighausen v. Knoche*, 58 id. 646, 50 Pac. 879.)

In the case first cited it is said : ''If there is any room to doubt what the journals of the legislature show ; if they are merely silent or ambiguous ; or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid.'' Therefore, within the rule before declared and now reaffirmed, the mere silence of the legislative journals as to whether amendments were made to a pending bill is not sufficient to impeach the measure which finally appears in the form of an enrolled, certified and approved enactment containing the amendments.

*In re* Taylor.

It is no reflection upon legislative integrity, no criticism of legislative methods, to say that the journals of the houses are often carelessly, inaccurately and partially kept.  They are often hurriedly made up, written by clerks having little aptitude for the work and slight sense of responsibility in its performance. Upon many days, especially as the session advances, the business accumulates, the saving of time becomes important, and the reading of the journal of the preceding day is dispensed with, so that mistakes fail of correction and unfortunately pass into forms of legislative history.   It is also a notorious fact that in many cases, to a great extent in all cases, the journals are not made up until after the legislative session has closed.   They are then put into such methodical shape as can be done, made up of the loose.and disconnected memoranda noted from day to day as the legislative session progressed.   These facts justify courts in attaching less weight to journals of legislative proceedings as evidence of the non-enactment of laws than they would otherwise possess.

After the commission of the offense for which the petitioner was convicted, but before his trial and conviction, chapter 43, Laws of 1891, under which he was charged, was repealed by section 64, chapter 47, Laws of 1897.   A proviso to the repealing section declares :

"*Provided*, that all criminal offenses committed, and criminal actions commenced under said chapter 43 of the Laws of 1891, shall in no manner whatsoever be affected or abated on account of the repeal of said law, and that the parties may be prosecuted, tried, convicted, sentenced and punished in all ways the same as though there had been no repeal of said chapter 43 of the Laws of 1891." (Gen. Stat. 1897, ch. 18, § 67.)

The petitioner contends that this proviso does not save for trial and conviction offenses committed while

the law of 1891 was in force, and therefore that he cannot be punished. His contention, however, upon this point resolves itself into a mere criticism of the, arrangement of the different clauses of the proviso and the phraseology employed. To our minds the proviso plainly preserves for future prosecution such offenses against the law of 1891 as had been committed before its repeal.

The writ is denied, and the petitioner ordered remanded.