TREECE et al. v. AMERICAN ASSOCIATION, Limited, et al.

(Circuit Court of Appeals, Sixth Circuit. May 18, 1903.)

No. 1,148.

1. TAX SALES—STATUTES—APPEAL—DEEDS—VALIDITY.
   The provisions of Code Tenn. 1858, c. 5, art. 4, relating to the sale of lands for delinquent taxes, having been repealed by Acts 1873, p. 168, c. 118, providing a different method of procedure to be observed in making tax sales, a deed for land sold for taxes after the act of 1873 took effect, by proceedings under the Code, was void.

2. SAME—ADVERSE POSSESSION—VOID TAX DEED—COLOR OF TITLE.
   A tax deed which was void by reason of the fact that the tax collector proceeded under a repealed statute was a sufficient assurance of title to confer title by adverse possession on the holder under the Tennessee seven-year statute of limitations.

3. SAME—ADVERSE POSSESSION BY ANOTHER—EXTENT.
   If a tenant be placed in possession of a tract of land, and no boundaries are inserted, limiting the possession to a prescribed part of the tract owned or claimed by the landlord, the possession of such a lessee would

---

¶ 2. Tax deed as color of title, see note to Bartlett v. Ambrose, 24 C. C. A. 402.

See Adverse Possession, vol. 1, Cent. Dig. § 462.

be a possession of the whole tract, although the land actually occupied might be but a small part thereof; but, if the lease be to a defined part of the larger tract, the possession will not avail the landlord beyond the boundaries of the parcel claimed and held by the tenant.

4. SAME—STATEMENTS BY COURT.

Where, in ejectment, plaintiff attempted to establish a tenancy by declarations of the tenant to strangers, purporting to have been made many years before the tenant's death, and the court submitted such declarations and the facts and circumstances tending to rebut the tenancy, and charged that the jury were not bound by the court's view of the facts, and that they were the exclusive judges of the weight of the evidence, it was not error for the court to state that it was his opinion that the proposition that a tenancy existed had not been established.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This is an action of ejectment. There was a jury, and verdict for the plaintiff, and judgment thereon. The defendant below has sued out this writ, and has assigned error upon the charge of the court and upon certain rulings upon questions of evidence.

Jerome Templeton, for plaintiffs in error.

Jesse L. Rogers and G. W. Montgomery, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge. 1. The plaintiff deraigned title from a grant to one S. C. Davis. The defendant claimed title under a tax sale and deed purporting to convey the title of said Davis to one J. N. Treece, the ancestor of the defendant A. N. Treece, and by descent from said J. N. Treece. The land in question was assessed for the state and county taxes of 1872. The revenue collector reported the taxes as due and unpaid to the May term, 1873, of the circuit court for the county of Claiborne, and at that term there was a judgment of condemnation, and an order of sale issued to the said revenue collector, who, in his deed, recites that in obedience to said order of sale "said land was advertised for sale as required by law," and that he sold same at public sale on the first Monday of July, 1873, and that J. N. Treece became the purchaser. The proceedings under which this sale was made were such as had been authorized by the Code of 1858, c. 5, art. 4; the proceeding therein authorized having, before said condemnation and sale, been repealed by the act of 1873, p. 168, c. 118, passed March 25, 1873, which provided a different method of procedure to be observed by the collector in making all tax sales. The Supreme Court of Tennessee has construed the act of 1873 as absolutely repealing the former provisions in regard to delinquent taxes, and to make it imperative that all tax sales after the act of 1873 took effect should be made according to the requirements of that act. McRee v. McLemore's Heirs, 8 Heisk. 440; In re Powell, Tax Collector, 8 Heisk. 444. The tax sale not having been made in accordance with the provisions of the act of 1873, p. 168, c. 118, which was the only statutory provision in force authorizing the sale of lands for delinquent taxes at the date of the proceedings under which the

Davis land was sold, the deed by the collector to J. N. Treece was absolutely void, and there was no error in the instruction of the court to that effect.

2. The tax deed being null and void, the plaintiff's title is confessedly good, unless the defendant has had an actual adverse possession for the full period of seven years, claiming and holding under some assurance of title purporting to convey the fee. Shannon's Code of Tennessee, § 4456. The tax deed to J. N. Treece, the ancestor of plaintiff in error, though void as an instrument conveying the Davis title, is nevertheless an assurance of title under the Tennessee statute of limitations. East Tenn. Iron & Coal Co. v. Wiggin, 15 C. C. A. 510, 68 Fed. 446; Hunter v. O'Neal, 4 Baxt. 494; Love's Lessee v. Shields, 3 Yerg. 405; Sharp v. Van Winkle, 12 Lea, 15, 19. A possession held under such an assurance of title operates to extend the possession to the boundaries as defined by it. The defendants relied upon an adverse possession within the boundaries of the tax deed for a time sufficient to defeat a recovery. To make out this defense, they relied upon an alleged adverse possession held for J. N. Treece and continued under A. N. Treece by one Wm. Watson. There was evidence tending to show that Watson was the grantee under a junior grant which interlapped to a small extent upon the older grant to S. C. Davis, and that Watson took possession of the land inside this interlap in 1860, and lived upon and cultivated same continuously for many years, claiming and holding under his grant, so that when the Davis land was sold for taxes in 1873, and bought by J. N. Treece, the Watson grant had become the only legal title, so far as same interlapped with the Davis grant. There was also evidence tending to show that while Watson had his western and northern lines run when he took possession, and had endeavored to place his fence upon his boundary line, by accident his fence was placed so as to include, possibly, 10 or 15 acres outside the lines of his grant, and within that part of the Davis grant not included by the interlap. There was also evidence tending to show that Watson, without any intention to take, claim, or hold any land outside his own grant, continued from 1860 to cultivate the land so inclosed down to some time between 1875 and 1879; supposing all the time that he was within the lines of his own title. There was also evidence tending to show that, after J. N. Treece acquired the tax title to the Davis grant, he discovered that Watson's fences included land not inside his grant, and that Watson, upon being so advised by Treece, agreed to hold for Treece, and as his tenant. The full evidence is not set out in the bill of exceptions, and it is not distinctly stated what was the precise agreement between Watson and Treece as to whether he was to hold only the land inclosed within his own fields for Treece, or to hold the land included in Treece's tax deed for him, and as his tenant. There was very grave conflict as to whether Watson ever, in fact, made any agreement with J. N. Treece of any kind, and much evidence tending to show that down to the date of Watson's sale of his land, in 1886, he claimed all of the land inside his inclosures as land actually included inside his own grant. Both J. N. Treece and Wm. Watson were dead when this suit was started. The question is as to whether the court erred in its charge in respect

to the effect of this subsequent holding under the alleged agreement between Watson and Treece.

That Watson's accidental and unintentional possession of a strip of the Davis grant did not operate to start the statute against Davis, or give him any possessory right, however long such accidental possession might last, seems to be settled by the most recent of the Tennessee decisions upon this subject. Kirkman v. Brown, 93 Tenn. 476, 27 S. W. 709. The prior case of Erck v. Church, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641, announced quite a contrary rule, and is not referred to in Kirkman v. Brown. Being, however, a question of strictly local law, we deem it our duty to follow Kirkman v. Brown, as the most recent announcement. If the operation of the statute is dependent upon what Judge Dickinson, in Erck v. Church, called the "mental status" of the trespasser, it is not strange that a change of "mental status" will render the possession adverse, even without notice to the owner of the land to be affected. But this case does not involve a consideration of the consequence of a discovery by such accidental occupier that he had overstepped his line, if he should thereafter continue in possession with the secret purpose of barring the true owner. Watson and Davis did not occupy the relation of landlord and tenant as a consequence of the unintentional occupation of a strip of the Davis land. Although, under the Tennessee cases, Watson's accidental occupation did not start the running of the statute of limitations, he was nevertheless a trespasser, however accidental and unintentional his occupancy. When Treece took his tax deed, purporting to convey to him Davis' title to the land in controversy, did he take possession thereunder? Finding, according to the claim of defendants below, that Watson was in possession of a part of the land claimed by him, he induced Watson to attorn to him. As Watson was under no relation estopping him from disputing Davis' title or right to possession, there is no good reason why he might not agree to hold thereafter for and under Treece. If Watson had been let into possession by Davis, or if, being accidentally in possession, he had agreed to hold under him, he would be under that sort of allegiance which would prevent him from becoming the tenant of another, claiming against Davis, without notice. That was not the case here, and if the defendants could show that Watson agreed to hold under and for Treece, against Davis and all others, there is no ground of estoppel which will prevent the usual consequences of such an adverse holding upon the Davis title. Holtzman v. Douglas, 168 U. S. 278, 283, 18 Sup. Ct. 65, 42 L. Ed. 466. The real question is as to whether Watson's subsequent tenancy under Treece is to be regarded as a possesion of the whole of the land included in Treece's tax deed, or as a possession adverse to Davis of so much only as was included within Watson's inclosures.

The court was requested by the plaintiff in error to charge the jury as follows:

"If William Watson was in possession and had an inclosure on Mr. Treece's land, which he did not claim, and if Mr. Treece had a tax deed which identified the tract of land to its boundaries, and William Watson agreed to hold that possession for Mr. Treece, whether he knew Mr. Treece's boundaries or not, nothing else appearing, the possession from that date would be the possession of J. N. Treece to the boundaries of his tract."

This was declined, and is now assigned as error.

Instead of this, the court told the jury, in effect, that, if the agreement between Treece and Watson was limited to the ground inclosed (that is, if Watson only agreed to hold the strip of the Davis' grant inside his own inclosures for Treece, and as his land), his possession thereafter would not be a possession of the Davis land generally, but only of so much of it as was inside of his fence, and would have no other effect, if held for seven years thereafter, than to give to Treece title to the strip so held. But the court told the jury that if they should find that Watson agreed to hold the Davis tract for Treece, and for the purpose of claiming the whole for Treece, and did remain in actual adverse possession of the part theretofore unintentionally inclosed, claiming to be the tenant of the Davis land for Treece, their verdict should be for the defendant, if such possession was continued for the full term of seven years after he became the tenant of Treece. The request which was refused plainly means that if the jury should find that Watson had a part of the Davis land within his inclosures, and agreed, upon discovering that he had improved over his line, that he would hold "that possession" for Treece, whether he knew the extent of Treece's claim or not, such possession of the Davis land inside his own old inclosures, and without any subsequent extension of his fences, or actual occupation of other parts of the Davis land, "would be the possession of J. N. Treece to the boundaries of his tract." This is not the law in Tennessee. Ross v. Cobb, 9 Yerg. 463; Brown v. Johnson, 1 Humph. 264; Massengill v. Boyles, 11 Humph. 113; Kincaid v. Meadows, 3 Head, 188; Jones v. Chiles, 2 Dana, 28; Ellicott v. Pearl, 10 Pet. 413, 443, 9 L. Ed. 475; McClung v. Ross, 5 Wheat. 123, 5 L. Ed. 46. It is undoubtedly true that an entry under an assurance of title, containing specific metes and bounds, there being no other adverse possession, gives a possession which is deemed to extend to the whole tract, though only a very small part is actually occupied. Hebard v. Scott, 95 Tenn. 467, 32 S. W. 390; Ellicott v. Pearl, 10 Pet. 413, 9 L. Ed. 475; Coal Creek Co. v. Heck, 15 Lea, 514, 516; Cowan v. Hatcher (Tenn. Ch. App.) 59 S. W. 689.

The rule is admirably stated by Judge Neal in Cowan v. Hatcher, cited above, when he says:

"A lease of a piece of land by prescribed boundaries within a larger tract will not, even though entered upon and held, effect a possession of any other part of the tract than such small piece, and will not extend possession by construction to the boundaries of the larger tract, of which such smaller piece is a part. * * * But if a landlord settles his tenant without bounds upon a tract of land, he is in possession to the limits of the title papers under which he claims."

In Ross v. Cobb, cited above, the jury were instructed—

"That a possession by a tenant of part of the interference covered by the 1,000-acre grant would be a possession to the extent of the boundaries of that grant. Although the lease to him was only 15 acres, it would be a possession taken by Blair by virtue of his grant."

This was held to be error, and the judgment reversed; the court saying:

"A lease of fifteen acres, defined by prescribed boundaries possessed by the lessee, would not be a possession of any other part of the tract than the fifteen acres. 10 Pet. 444, 9 L. Ed. 475. But if a lease was made of a tract, and no boundaries were inserted circumscribing the tenant, then a possession under such a lease would be a possession of the whole tract, although the lessee might actually occupy only 15 acres."

In Massengill v. Boyles, cited above, the circuit court instructed the jury that if—

"Gilmore obtained Massengill's leave to extend his fence at the angle B, F, E, on the annexed plat, that the possession of Gilmore under Massengill would not avail Massengill any further than to the extent of his actual inclosure."

This was held a correct charge, the Supreme Court saying:

"If a tenant lease land by prescribed metes and bounds, the possession will not avail the landlord further than to the extent of the boundary thus claimed and held by the tenant. If he rent a farm or a tract of land, and occupy but a part thereof, then the possession of a part is the possession of the whole."

There was no error in the charge of Judge Clark, nor in his refusal to give the charge requested.

3. The defendants excepted to the action of the court in saying to the jury, "It is my opinion that the proposition that Watson ever held for Treece is not made out." While we quite agree with the observation of the Supreme Court of Pennsylvania in Burke v. Maxwell's Adm'rs, 81 Pa. 139, 153, that, "if the expression of an opinion upon the evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided," we are unable to bring ourselves to the conclusion that the trial judge exceeded the limit of his authority in this case. Both Watson and Treece were dead, and the tenancy of Watson for Treece was sought to be made out by alleged casual declarations made by Watson to strangers, characterizing his possession, and purporting to have been made many years before Watson's death. These declarations were stated to the jury, as well as the facts and circumstances tending to rebut any such tenancy. After doing this, and after also instructing the jury very fully that they were not to be bound by the court's view of the facts, and that they were the exclusive judges of the weight of the evidence, the court did say to the jury that his judgment was that the plaintiff had not sufficiently made out his case upon this point. There was no exception to the fullness or fairness with which the facts were stated, and, under the circumstances of this case, we think that no reversible error was committed in the expression of opinion covered by the exception.

4. Certain other minor matters were assigned as error. They are without merit, and need not be stated in detail.

Judgment affirmed.