THE CITY OF BELLEVILLE V. SETH G. WELLS, *as Auditor, etc.*

No. 15,218.    (88 Pac. 47.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Act Authorizing Cities to Issue Bonds.* An act entitled "An act authorizing certain cities to issue bonds for natural gas, water, light and heating purposes," being chapter 101 of the Laws of 1905, is valid and constitutional.

2. ———— *Title of Act—Evidence—Legislative Journals—Enrolled Bill.* The legislative journals leaving it doubtful whether the title to an act as it appears by the enrolled bill is the same title the bill had when it passed the house and senate, the doubt must be resolved in favor of the enrolled bill and the validity of the act upheld.

3. MUNICIPAL CORPORATIONS—*Limitation of Bonded Indebtedness—Repeal of Statute by Implication.* The amount of bonds which cities of the first, second and third classes are authorized to issue, under chapter 101 of the Laws of 1905, for the purposes therein mentioned, is not controlled by any limitation of previous legislative acts. The act of 1905 is the latest expression of legislative will upon the subject, and repeals the provisions of all other acts in conflict with it.

Original proceeding in mandamus. Opinion filed December 8, 1906. Writ allowed.

*Waters & Waters,* and *V. D. Bullen,* for plaintiff.

*C. C. Coleman,* attorney-general, for defendant.

The opinion of the court was delivered by

PORTER, J.: Plaintiff seeks to compel defendant, as state auditor, to register certain bonds of the city of Belleville which the authorities of that city attempted to issue under the provisions of the act of the legislature entitled "An act authorizing certain cities to issue bonds for natural gas, water, light and heating purposes," the bonds reciting on their face that they are issued in pursuance of the statute, which appears as. chapter 101 of the Laws of 1905. It is conceded that the proceedings are regular and in accordance with the provisions of the act of 1905, and the only questions to be decided are: (1) The validity of the law; (2) whether or not the amount of bonds issued, the registration of which it is sought to compel, is in excess of any statutory limitation. The questions are presented by a demurrer by plaintiff to defendant's answer. The validity of the law is challenged upon three constitutional grounds:

First, that it appears affirmatively from the journals of the legislature that the statute was not passed in accordance with section 14 of article 2 of the constitution, in this: that the act as signed by the governor and as it appears in the enrolled bill was and is substantially different from the act as passed by the two houses of the legislature. This court has laid down the rule that before an enrolled bill can be impeached successfully by the journals of the legislature the latter must show affirmatively, clearly, conclusively and beyond all doubt that the bill as enrolled was not the bill passed. (The State, ex rel., v. Francis, Treas'r, 26 Kan. 724; Weyand v. Stover, Treas., 35 Kan. 545, 11 Pac. 355; In re Vanderberg, Petitioner, &c., 28 Kan. 243; The State v. Andrews, 64 Kan. 474, 68 Pac. 668.) Also, that the records of the legislative journals import absolute verity, and are conclusive as to the facts there-

in affirmatively shown. (*Division of Howard Co.*, 15 Kan. 194; *County-seat of Linn Co.*, 15 Kan. 500.)

The legislative history of the bill in question shows that it was introduced into the senate with a certain title: "An act authorizing cities to issue bonds for water, light and heating purposes." (Sen. Jour., 1905, p. 107.) By that title it passed the senate. (Sen. Jour., p. 524.) At the time it was recommended for passage by the committee of the whole the words "as amended" appear in the journal (p. 512), and also in the message transmitting the bill to the house. (House Jour., 1905, p. 822.) In all its subsequent career, until enrolment, the title remained unchanged. The message of the governor in reference to the bill follows:

"March 6, 1905.
"MESSAGES FROM THE GOVERNOR.
"EXECUTIVE DEPARTMENT,
TOPEKA, March 4, 1905.
*"To the Senate:* I have this day approved the following senate bills: . . . No. 308, An act authorizing certain cities to issue bonds for natural gas, water, light and heating purposes.
E. W. HOCH, *Governor.*"
(Sen. Jour., 1905, pp. 671, 672.)

The house journal, after reciting the title of the bill, states that "the title, as above, was agreed to." (Page 912.) It is argued that the use of the words "as above" is an affirmative showing from which it conclusively and clearly appears that the words "natural gas" were not in the title when it passed the house, and that the subsequent report of the senate committee on enrolled bills stating that the committee had compared the engrossed bill and enrolled bill and that the latter was correct, instead of proving anything in favor of the bill, proves that the committee was mistaken. We are asked to say that, while the senate journal imports absolute verity, in this case it only imports that the committee had made a report—not that the report was true. A number of former decisions of this court are

controlling.   In *The State v. Andrews,* 64 Kan. 474, 67 Pac. 870, it was said:

"It cannot be claimed that such statement tends to show whether the title which was 'agreed to' was the original title or that which the bill, at some point on its journey, acquired, and which it ought to have taken then and there."   (Page 483.)

The language used in *In re Taylor,* 60 Kan. 87, 55 Pac. 340, is specially pertinent here.   It was there said:

"While the journals of the two houses may be examined for the purpose of ascertaining whether the legislative branch has expressed its will in accordance with constitutional requirements, yet a legislative measure which has taken upon itself all the forms and appearances of verity which are involved in its enrolment in the office of the secretary of state, its certification by the president of the senate and speaker of the house and its approval by the governor, may not be impeached by the legislative journals except when the proof furnished by them is of the clearest, strongest and most undoubted character. . . . Therefore, within the rule before declared and now reaffirmed, the mere silence of the legislative ·journals as to whether amendments were made to a pending bill is not sufficient to impeach the measure which finally appears in the form of an enrolled, certified and approved enactment containing the amendments."   (Page 92.)

The history of the bill shows that it was amended at some time in its career, and, while the record does not affirmatively show that the title was amended, it does not appear conclusively, clearly and beyond all doubt that the bill as enrolled is not the bill passed.   It does appear beyond question that the bill passed by both houses and known throughout its entire history as senate bill No. 308 is the bill signed by the governor.

In a case where the journals of the legislature are silent with reference to a change in the title, and it is possible to explain them upon the theory that the enrolled statute is correct and valid, it is the duty, we think, of the court to uphold the statute.   (*Homrig-*

*hausen v. Knoche,* 58 Kan. 646, 50 Pac. 879; *In re Taylor,* 60 Kan. 87, 55 Pac. 340; *The State v. Andrews,* 64 Kan. 474, 67 Pac. 870.)

The second ground upon which the validity of the act is challenged is that it is in contravention of section 5 of article 12 of the constitution of the state of Kansas, which declares that "provision shall be made by general law for the organization of cities, towns and villages; and their power of . . . borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power." (Gen. Stat. 1901, § 214.) To the first branch of this objection it is only necessary to say that the act is a general one, and in express terms applies to "any city of the first, second or third class." (§ 1.) As to the second branch of the challenge, it is sufficiently answered by the case of *City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486, holding that it is a matter exclusively for the legislature to determine what are reasonable restrictions to be imposed upon the powers of cities with reference to taxation.

Third, it is further insisted that the act in question is in contravention of section 17 of article 2 of the constitution, requiring that "all laws of a general nature shall have a uniform operation throughout the state." (Gen. Stat. 1901, § 135.) The argument is that, because some cities under previous legislative authority have issued bonds for electric-light and water-works plants, to give them by this act new authority to issue bonds for such purposes creates a condition of inequality between those cities and such cities as may not have heretofore incurred any such indebtedness. This results, it is said, in destroying the uniform operation of the law. We fail to see the force of the argument. The law by its terms has a uniform operation, so far as it operates. It creates no indebtedness upon any city. It gives to the electors of all cities the power to vote bonds for certain purposes, if in their opinion the

needs of their city require it. In some instances the growth of a city and the depreciation of its electric-light or water-works plant, bonded under the authority of previous acts of the legislature, may demand additional facilities. It is left for the electors of the city to determine. (*C. K. & N. Rly. Co. v. City of Manhattan,* 45 Kan. 419, 25 Pac. 879.) That some cities, after the law. is put in operation, may have a different percentage of bonded indebtedness for these purposes than other cities would result not so much from the operation of the law as from local conditions. A rainfall of one inch over the whole state might result in a flood in those sections where the soil was already satu-rated with previous rains, and produce a different result in those sections where drought happened to prevail, but the rain would be uniform in its operation. A law providing for the payment of a poll-tax of the same amount by all able-bodied men between certain ages would be uniform in its operation, within the meaning of this provision, although some of the very poor might find it a hardship which those in better circumstances would not notice. The constitutional requirement is satisfied when the law is made to apply to all cities and the amount of bonds issued under it fixed at the same percentage of the assessed valuation.

The validity of the act in question being determined, there remains, after all, the principal objection to the registration of these bonds, which is that the proposed issue of bonds exceeds the limitations established by law. It appears that the city of Belleville is a city of the second class, with a population of over 2000; that its assessed valuation is $231,000; and that in addition to the proposed bonds it has outstanding bonds, issued under former acts of the legislature, for water-works and railroad aid, amounting to $40,000. It also appears that $28,000 of these outstanding bonds were issued for the purpose of providing water-works, which is one of the purposes mentioned in the act of 1905.

Fifteen per cent. of the assessed valuation amounts to $34,650. It is the contention of defendant that, inasmuch as none of the previous legislative acts limiting the amount of indebtedness to be incurred for such purposes by cities of the second class has been specifically repealed, the power of the city of Belleville is limited by the previous acts, and it now has only power to issue bonds to the extent of $6,650, which, it is said, together with the outstanding bonds, amounts to the fifteen per cent. Section 4 of chapter 101 of the Laws of 1905 reads as follows: "No bonds in excess of fifteen per centum of the assessed valuation of such city shall be issued under the authority of this act." Section 5 reads: "All acts and parts of acts in conflict herewith are hereby repealed."

It will be observed that, as was said in *C. K. & N. Rly. Co. v. City of Manhattan,* 45 Kan. 419, 25 Pac. 879, this "is the latest statute, and is complete in itself." (Page 422. See, also, *The State, ex rel., v. Studt,* 31 Kan. 245, 1 Pac. 635.) Moreover, section 5 repeals all acts and parts of acts in conflict with the provisions of the act in question. It does not purport to be an amendment to any previous act, but is an independent measure. All bonds issued under its provisions are limited in amount by the provisions of section 4. The limitations in other statutes, therefore, do not control the amount of bonds authorized to be issued under this act. The plain words of the statute speak for themselves, and the courts are bound by them. The writ is allowed.

All the Justices concurring.