# WOOLFOLK v. ALBRECHT.

### (133 N. W. 310.)

**Adverse possession — color of title — construction of statute.**

1. Following Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737, *held,* that chapter 158, Laws 1899, was constitutionally passed by the legislative assembly.

**Statutes — evidence as to due passage.**

2. Whether the enrolled bill, when signed by the president of the senate, the speaker of the house, and approved by the governor and filed in the office of the secretary of state, is conclusive evidence of the due passage of the law, or whether the legislative journals are controlling, not decided for reasons stated in the opinion.

**Statutes — proper enactment — journal entries.**

3. Conceding that the journal entries relating to the history of a bill may be considered and are controlling over the enrolled bill as authenticated by the president of the senate and speaker of the house and approved by the governor, they are entitled to no probative weight, and the enrolled bill will be alone controlling where such journal entries are conflicting, so that it is impossible to ascertain therefrom with certainty that the constitutional requirements were not complied with in the passage of such bill.

**Statutes — presumption as to proper enactment.**

4. The presumption that the enrolled bill was constitutionally passed is very strong, and, even conceding that such presumption is rebuttable by reference to the journals, the evidence must be very strong and clear in order to overcome such presumption.

Applying such test to the journal entries relative to the passage of said chapter 158 of Laws 1899, *held,* that the enrolled bill is controlling.

**Adverse possession — color of title — tax deed.**

5. Under Laws 1899, chap. 158, title to real property in this state may be acquired by the adverse, open, exclusive, and undisputed possession thereof

---

Note. — The question whether a void tax deed is color of title is treated in an exhaustive note in 27 L.R.A.(N.S.) 340, and in note in 88 Am. St. Rep. 727. As to the effect of an invalid tax deed as color of title within general statutes of limitations, see extensive note in 11 L.R.A.(N.S.) 772.

The authorities on the question of legislative journals as evidence respecting passage of statute are collated in notes in 23 L.R.A. 340, 51 Am. Dec. 616, and 12 Am. St. Rep. 217. As to the conclusiveness of enrolment, see note in 85 Am. Dec. 357.

for a period of ten years under claim of title and by paying all taxes assessed against the land for such period.

*Held,* that a certain deed executed and delivered by the county auditor to defendant, describing the land and purporting for a consideration to transfer the same to defendant, although void upon its face, constitutes color of title sufficient upon which to base an adverse claim under said chapter.

Opinion filed June 7, 1911.   On petition for rehearing, June 22, 1911.

Appeal from District Court, Morton county; *W. C. Crawford,* J.

Action by Eliza A. Woolfolk, for the use and benefit of John Blood-good, against Sophie Albrecht. From a judgment for defendant, plain-tiff appeals.

Affirmed.

*Ball, Watson, Young, & Lawrence,* for appellant.

*F. H. Register, J. E. Campbell,* and *W. H. Stutsman,* for respondent.

Fisk, J.  Action to determine adverse claims to certain real property in Morton county. The complaint is in the statutory form. The sole defense relied upon is that one John Henry Albrecht, deceased, former husband of defendant, acquired title to the real property in question under the provisions of chapter 158, Laws of 1899, by the continuous, open, notorious, and exclusive adverse possession thereof under claim and color of title and payment of taxes thereon for more than ten consecutive years,—to wit, from 1895 to the time of his death, in 1907, —and that defendant acquired title there as devisee under the will of her said husband, and has at all times since continued to occupy and possess said real property, paying taxes thereon each year.

There are but two questions presented for determination: First, Did John Henry Albrecht, during the ten years he was in the actual adverse possession of this property, have title or color of title there-to within the meaning of the statute aforesaid? And, second, Was chapter 158 aforesaid constitutionally passed?

If either of these propositions requires a negative answer, a reversal must follow; otherwise the judgment appealed from must be affirmed.

Respondent does not contend that the tax proceedings were valid; her contention being merely that her husband acquired from the county auditor an alleged conveyance of the premises in the form of a deed,

which, it is contended, was sufficient to vest in him color of title, which instrument is as follows, omitting the acknowledgment:

## Absolute Property Deed.

Know all men by these presents, that whereas John Foran, the then auditor of Morton county, state of North Dakota, in pursuance of the provisions of chapter 132, General Statutes of 1890, did offer for sale, prior notice having been given as required by law, on the 2d day of December, 1890, at the courthouse of Mandan, Morton county, North Dakota, duly and separately, all of the within-described tract or parcel of real estate for the several sums so declared to be due thereon, and returned delinquent by the county treasurer of said county, for the non-payment of taxes for the year prior, 1889, theretofore duly levied on a valid assessment of said property for said year, amounting in the aggregate to the sum of $26.81, including interest and penalty thereon and the costs allowed by law, and no one bidding upon said offer an amount equal to that for which said tract or parcel was subject to be sold, the same was bid in for the state of North Dakota, and it appearing that three years or more have elapsed since the date of sale, and said property never having been redeemed nor assigned by the state in accordance with the provisions of § 86, chapter 132, Laws 1890, this property is now the absolute property of the state of North Dakota; and whereas, in accordance with § 10, chapter 100, Laws 1891, taxes for subsequent years have been levied upon each tract or parcel severally based upon due assessments thereof, amounting in the aggregate to the sum of $327.26, making the total amount due the state in taxes, penalties, interest, and costs, up to the present date, upon all of said tract or parcel, in the aggregate the sum of $354.07, and whereas the state auditor of said state has, in accordance with § 86, chapter 132, Laws 1890, directed the county auditor of said county to sell and dispose of said real estate at private sale:   Now therefore, I, A. V. Schallern, auditor of said county of Morton, in consideration of the premises and the sum of $354.07, paid to the treasurer of said county on the 31st day of May, 1895, and by virtue of the statutes in such case made and provided, have granted, bargained, and sold, and by these presents do grant, bargain, and sell unto John Henry Albrecht, his heirs and assigns, the following described piece or

parcel of land, situate in said county and state, to wit, all of section 19, township 138 north of range 82 west 5th p.m., containing 640 acres, more or less, in Morton county, North Dakota. To have and to hold unto him the said John Henry Albrecht, his heirs and assigns forever.

In witness whereof, I, A. V. Schallern, county auditor, as aforesaid, by virtue of the authority aforesaid, have hereunto subscribed by name and affixed my seal this 17th day of July, A.D. 1895.

A. V. Schallern,

Auditor, Morton County.

The record discloses that such purported conveyance was duly filed for record in the office of the register of deeds of said county on July 18, 1895. Such purported conveyance was, no doubt, executed and delivered pursuant to §§ 86 and 87 of chapter 132, Laws of 1890. These sections are as follows:—

"86. Sale of property bid in for the state. All pieces or parcels of real property bid in for the state under the provisions of this act, and not redeemed or assigned within three years from the date of sale, shall become the *absolute property of the state,* and may be disposed of by the county auditor at public or private sale, as the state auditor may direct, subject to such rules and restrictions as he may prescribe. . . .

"87. *Deed to be given on sale of forfeited property.* Upon the sale of any tract or lot of forfeited real property the county auditor shall execute to the purchase thereof a *deed in fee simple* of the property so purchased, which shall pass to such purchaser absolute title to the property therein described, *without any other act or deed whatever.* . . . Such deed may be recorded as other deeds of real estate, and the record thereof shall have the same force and effect in all respects as the record of such deeds, and *shall be evidence in like manner.* Laws 1890, p. 376, chap. 132, §§ 86, 87."

It will be noticed that the statute aforesaid does not prescribe the form of the deed therein mentioned, and we think it entirely clear that, if the state had acquired title through the tax proceedings, such deed would have been sufficient to have transferred such title to the grantee therein named. It is, we think, equally clear under the rule announced in Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737, that such purported deed operated to confer color of title upon the grantee therein

named.   Appellant's attempt to differentiate on principle the case at bar from Power v. Kitching is, we think, without force.   Such contention is based upon the unwarranted assumption of counsel that there was no statutory authority authorizing such a conveyance to be made. The fallacy of such argument lies in the erroneous conclusion that the only authority for the execution of a deed is that contained in § 7, chapter 100, Laws of 1891.   The deeds prescribed by said section merely relate to conveyance in cases where the property was bid in at the tax sale by a person other than the state, or where the state has bid in the property and assigned the certificate of sale to another.   In the case at bar the state bid in the property, but did not assign the certificate before it ripened into title by operation of law through lapse of time as provided in § 86, chapter 132, Laws of 1890, aforesaid.   Had the tax proceedings been regular in all respects, the state would have become the absolute owner of this property at the expiration of three years, upon compliance with other requirements of law regarding notice of expiration of time for redemption.   Darling v. Purcell, 13 N. D. 288, 100 N. W. 726.   The only authority prescribed for transferring such title to another is that designated in §§ 86 and 87 aforesaid.   We are entirely clear that the deed from the county auditor to John Henry Albrecht, even conceding the same to be void on its face, was sufficient to confer on such grantee color of title within the meaning of chapter 158, Laws of 1899, aforesaid.   Power v. Kitching, supra; Stiles v. Granger, 17 N. D. 502, 117 N. W. 777; Murphy v. Dafoe, 18 S. D. 42, and cases cited at page 49, 99 N. W. 86; Treece v. American Asso. 58 C. C. A. 266, 122 Fed. 598; McMillan v. Wehle, 55 Wis. 685, 13 N. W. 694; Whittlesey v. Hoppenyan, 72 Wis. 140, 39 N. W. 355; Harrison v. Spencer, 90 Mich. 586, 51 N. W. 642; Brannan v. Henry, 142 Ala. 698, 110 Am. St. Rep. 55, 39 So. 92; Brown v. Hartford, 173 Mo. 183, 73 S. W. 140; Hughes v. Wyatt, 146 Iowa, 392, 125 N. W. 334; State v. Harman, 57 W. Va. 447, 50 S. E. 828; 27 Am. & Eng. Enc. Law, 973, and cases cited; 1 Cyc. 1095, and cases cited.   See also 1911 Cyc. Ann. 97.

Having reached the above conclusion, it only remains for us to determine whether chapter 158, Laws 1899, being § 4928, Rev. Codes 1905, was constitutionally passed.   The history of this section is as follows: The bill for its enactment originated in the senate, where it was duly

passed in the exact language of the enrolled bill. The house journal shows that it was materially amended in the house, and as thus amended that it was duly passed. The journal of the senate also shows that it was messaged back to the senate by the chief clerk, as having been passed without change. The journals of both houses disclose that such bill was duly authenticated by the signatures of the officers, as required by § 66 of the Constitution, and such enrolled bill, as filed in the office of the secretary of state, bears the signature of the governor, as required by § 79, Constitution. The precise question presented is what, under the facts, should be received by the courts as controlling evidence of the existence or nonexistence of this law. Should the house journal control over the enrolled bill as authenticated by the signatures of the sworn officers of both houses and that of the governor, as well as the message signed by the chief clerk, or should the latter control? Upon this very important question, there is an irreconcilable conflict in the authorities.

For reasons hereinafter stated, we deem it unnecessary to review at length the many adjudicated cases upon this question, or to announce what we deem the correct rule, as such decision is not necessary to a proper determination of this appeal. We shall therefore reserve such question for future determination, and shall content ourselves with a citation of a few authorities where the reader may find the cases collated both pro and con.

The most recent case dealing with this question which has come to our notice is that of DeLoach v. Newton, 134 Ga. 739, 68 S. E. 708, 20 Ann. Cas. 342, decided in July, 1910, wherein Mr. Chief Justice Fish, in a very able, elaborate, and instructive opinion, cites and reviews the authorities, and reaches the conclusion that the enrolled bill, when duly authenticated by the signatures of the president of the senate and speaker of the house, and approved by the governor, and deposited in the office of the secretary of state, cannot be impeached by the legislative journals. See also Palatine Ins. Co. v. Northern P. R. Co. 9 Ann. Cas. 582, and exhaustive note (34 Mont. 268, 85 Pac. 1032), 26 Am. & Eng. Enc. Law, 2d ed. 556; 36 Cyc. 971; 1911 Cyc. Ann. 3740; Yolo County v. Colgan, 84 Am. St. Rep. 41, and note (132 Cal. 265, 64 Pac. 403).

However the rule may be regarding the evidential force of the en-

rolled bill when properly authenticated as to its due passage by the legislature, the authorities are agreed that the presumption that the enrolled bill was constitutionally passed is very strong, and, even where such presumption is rebuttable by reference to the journals, the evidence must be very strong and clear in order to overthrow the same.

Miesen v. Canfield, 64 Minn. 513, 67 N. W. 632. Applying this rule to the case at bar necessitates a holding that such presumption, even if rebuttable, is not overcome by the journal entries, and this is the effect of the decision of this court on this precise question in Power v. Kitching, supra, as may be seen by the language employed in the opinion. We quote: "The petitioner claims that the statute referred to in the original opinion, and relied upon by the defendant (chapter 158, Laws 1899), was never enacted or passed by both branches of the legislative assembly. It is conceded that a bill (No. 121) embracing the statute originated in the senate, and, after passing that body, that it was regularly transmitted to the house of representatives; and it is further conceded that the house journal shows that the bill was amended in the house, and after being amended was regularly passed by the house, and that upon the day of its passage in the house it was certified or messaged to the senate by the chief clerk of the house, and that such certificate of the clerk stated, in effect, that the bill was returned to the senate 'unchanged,' thereby declaring that the bill had not been amended in the house of representatives. . . . The petitioner reminds the court that the court is in duty bound to judicially notice the journals of both branches of the legislature; but the petition does not advise the court respecting any rule of law which is to govern courts in a case such as this, where the legislative journals are at loggerheads with each other, and where it will become necessary, in deciding a question of fact, to accept one part of the record evidence, and disregard another. That such a conflict of evidence exists in this case is manifest. The house journal shows affirmatively that the bill was amended in that body, and that it passed after such amendment. But the senate journal shows affirmatively that a sworn officer of the house—its chief clerk—certified that the bill was returned to the senate 'unchanged,' which means and must mean that the measure was not amended in the house. There is also strong negative evidence that the bill was not amended in the house. Had it been so amended, it would have been necessary to again pass

it in the senate before it could take effect as a law, or be officially signed and sent to the governor for approval. But the senate journal is silent as to any such action after the bill was returned to the senate. The senate journal only shows that the bill was signed officially in the senate after having been transmitted from the house. This silence of the senate journal, while negative in character, is nevertheless strong evidence that the bill never was amended in the house. We refer to these conflicts in the evidence, however, only to show that there is evidence to be found in the journals of the two houses bearing upon both sides of the question of fact to be determined, *viz.,* whether the published law was in fact ever enacted by both branches of the legislature. The evidence of the journals being conflicting, it will be necessary to consider the evidential effect of the enrolled bill properly authenticated and on file with the secretary of state. Which shall prevail? Which possesses the greater probative force,—the conflicting evidence of the journals, upon one side, or, on the other side, the positive evidence, consisting of the authenticated bill found in the hands of the official custodian of the laws?"

The chief clerk of the house, whose duty it was to make the journal entries, made two wholly irreconcilable entries, to wit: one, that the bill was amended and passed the house as amended; and the other, in effect, that the bill had passed the house without change. In the light of this conflict, the journals, even if otherwise competent to impeach the enrolled bill, were without probative force, and a resort to the latter was imperative. Where entries in a journal are ambiguous and conflicting, so that it is impossible to ascertain therefrom whether the bill was duly enacted, it will be assumed that the proper constitutional action was taken thereon. Homrighausen v. Knoche, 58 Kan. 646, 50 Pac. 879; State ex rel. Atty. Gen. v. Francis, 26 Kan. 724; Re Taylor, 60 Kan. 87, 55 Pac. 340; Chesney v. McClintock, 61 Kan. 94, 58 Pac. 993; State ex rel. Godard v. Andrews, 64 Kan. 474, 67 Pac. 870; Belleville v. Wells, 74 Kan. 823, 88 Pac. 47; Missouri, K. & T. R. Co. v. Simons, 75 Kan. 130, 88 Pac. 551.

We conclude, therefore, that the reasoning and conclusion reached by the court in Power v. Kitching on this question, in so far as it up-

held chapter 158 aforesaid, was entirely sound and is accordingly adhered to.

The judgment appealed from is affirmed.

MORGAN, Ch. J., not participating. Honorable FRANK E. FISK, Judge of the Eleventh Judicial District, at the request of the court sat, in the hearing of the above case.


## On Petition for Rehearing.


FISK, J. Counsel for plaintiff have filed a petition for rehearing, in which they earnestly contend that the court erred in deciding that absolute property deed issued by the auditor to John H. Albrecht, on July 17, 1895, was sufficient to constitute color of title. They attempt to distinguish this case from Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737, on the alleged ground that the title to the property in the case at bar was in the United States government, and hence not subject to taxation. It is true that patent was not issued to the Northern Pacific Railway Company for these lands until January 17, 1896, while the so-called absolute property deed aforesaid is based on an alleged tax title acquired by the county for the taxes of 1889. Were the lands subject to taxation in 1889 and subsequent years? It is clear to us that they were. We must take judicial notice that these lands were included within the land grant made by the government to the Northern Pacific Railway Company in 1864, and also that such lands were surveyed long prior to 1889 and title thereto vested in such railway company. The date patent was issued is in no manner controlling as to the time title was acquired by the railway company under such grant. The record discloses that the company exercised ownership of such lands as early as January 16, 1883, on which date it executed and delivered to R. F. Woolfolk a warranty deed thereof. It is fair to assume, therefore, that the railway company had, at or prior to that date, done everything essential to complete its title under the grant. However this may be, and conceding that in 1889 the railway company had not paid to the government the expenses of making the survey, still these lands were not exempt from taxation, for Congress, after the decision of Northern P. R. Co. v. Traill (Northern P. R. Co.

v. Rockne), 115 U. S. 600, 29 L. ed. 477, 6 Sup. Ct. Rep. 201, holding such lands exempt from taxation until the survey expenses were paid, expressly provided to the contrary. See chap. 764, 24 Stat. at L. p. 143, U. S. Comp. Stat. 1901, p. 1476. This act was approved July 10, 1886, three years prior to the initiation of the tax proceedings on which defendant's claim of title is based. Among other things, Congress there enacted "that no lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by states, territories, and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting, and conveying the same, or because no patent has been issued therefor."

In view of this statute we are unable to concur in the view of plaintiff's counsel that such lands were not subject to taxation. The title to these lands had passed from the government to the railway company and its vendees, and at most the government merely retained a lien as security for the payment of the survey fees and expenses, etc., which by the act of Congress aforesaid is merely paramount to the liens for taxes.

The contention, in effect, that the statute (§ 4928, Rev. Codes 1905) is merely a statute of limitations, and may not be used as a sword of attack, but only as a shield of defense, is without merit. By the express language of this section, as well as the preceding one, a compliance therewith operates to confer a good and valid title, and we know of no reason why a title thus acquired cannot be asserted by its owner in exactly the same manner as a title acquired in any other way.

For these reasons the petition for a rehearing is denied.