WALTER F. ZIEGLER et al., Partners, etc., *Plaintiffs*, v. THE CITY OF JUNCTION CITY et al., *Defendants*.

No. 19,006.

SYLLABUS BY THE COURT.

PAVING STATUTE—*Enrolled Bill—Signed by the Governor—Published—Impeached by the Legislative Records.* An enrolled bill, signed by the governor and published as a statute, may be held not to be a valid enactment, where words which it contains, and which are essential to its operation, are shown by the journal of one of the branches of the legislature to have been stricken out by amendment before the bill passed that body, and where other record evidence confirms the correctness of the entry on the journal, and accounts for the discrepancy between it and the enrolled bill.

Original proceeding in mandamus. Opinion filed November 8, 1913. Writ denied.

*W. S. Roark,* of Junction City, for the plaintiffs.

*I. M. Platt,* city attorney, for the defendants; *James V. Humphrey,* of Junction City, of counsel.

*Thomas Dever,* of Junction City, and *C. S. Ritter,* of Iola, as *amici curiæ.*

The opinion of the court was delivered by

MASON, J.: Prior to 1913 the statute relating to cities of the second class provided that the improved property should bear the cost of paving streets, except at the intersections, which were paved at the expense of the city. (Gen. Stat. 1909, § 1374; amended by Laws 1911, ch. 102, § 1.) The statute book of that year contains what purports to be an act changing this rule by requiring the city to bear also one-third of the cost of paving in front of private property. (Laws 1913, ch. 111, § 1.) A doubt has arisen whether this act, as enrolled, approved by the governor, and published, ever passed the senate. To settle this question a writ of mandamus has been asked of this court by a

firm of contractors, against the city of Junction City, to require a paving tax to be levied in accordance with the provisions of the new law. The issuance of the writ is resisted on the ground that the journal of the senate shows explicitly and beyond all substantial doubt that the act in its present form did not receive the approval of that body.

It is a familiar fact that there is a difference of judicial opinion upon the question whether an enrolled bill certified as correct by the presiding officer of each house, approved by the executive, and published, is absolutely conclusive evidence of its passage by both houses. In the first edition of Sutherland's Statutory Construction (§ 41) it was stated in effect that a majority of the state courts had returned a negative answer to this question. In the second edition (Lewis' Sutherland Statutory Construction; 1904) it is said:

"It is no longer true that 'in a large majority of the states' the courts have held that the enrolled act may be impeached by a resort to the journals. A comparison will show that the courts are now about equally divided on the question. The current of judicial decision in the last ten years has been strongly against the right of the courts to go back of the enrolled act. Undoubtedly the decision of the supreme court of the United States in *Field v. Clark* [143 U. S. 649] has had much to do in creating and augmenting this current, but it may also be due to the greater simplicity, certainty and reasonableness of the doctrine, which holds the enrolled act to be conclusive." (1 Lewis' Sutherland Statutory Construction, 2d ed., § 44.)

In a very recent note the cases on all phases of the question are collected and classified. Of the particular situation here presented it is there said:

"The weight of authority sustains the rule that an enrolled bill may be impeached by an affirmative showing from the journals to the effect that the bill, as enrolled and approved by the governor, materially differed from that passed." (Note, 40 L. R. A., n. s., 24.)

In this state it is settled that the enrolled bill may be impeached, but only when "the journals of the legislature show, clearly, conclusively, and beyond all doubt, that the act was not passed regularly and legally." (*The State, ex rel., v. Francis, Treas'r*, 26 Kan. 724, 731; *Railway Co. v. Simons*, 75 Kan. 130, 88 Pac. 551.) The question now before us is whether this condition arises in the present case. The original bill (House Bill No. 498) undertook to accompish the purpose already stated, by making two additions to the language of the existing statute, the effect of which is shown by the following extracts, the added words being italicised:

"For all paving improvements of the squares and areas formed by the crossing of streets, avenues and alleys *and for paying one-third of the cost of paving those portions of the streets not included in said squares and areas,* the assessment should be made upon all the taxable property of the city.

"For *paying two-thirds of the cost of* paving, macadamizing, curbing and guttering all streets, avenues and alleys, for doing all excavating and grading necessary for the same, except the squares and areas formed by the streets, avenues and alleys after said streets, avenues and alleys have been brought to grade as provided in the first subdivision of this section relating to the opening, widening and bringing to grade all streets, avenues and alleys, the assessments shall be made for each block separately, on all lots and pieces of ground to the center of the block on either side of such street or avenue."

On February 27 the bill passed the house in this form, merely verbal amendments being made upon another matter, as is shown by the house journal and the original document preserved in the office of the secretary of·state. In the senate it was referred to the committee on cities of the second class, which recommended that it be passed with two amendments (Senate Journal, 1913, p. 666), neither of which, however, was ever

adopted or even moved. The senate journal, under the date March 10, contains these entries concerning it:

"House bill No. 498, An act amending section 1 of chapter 102, Session Laws of 1911, relating to power of cities of the second class, was read the third time.

"Senator Paulen moved to amend section 1 by striking out in lines 26, 27 and 28 the following words: 'and for paying one-third of the cost of paving those portions of the streets not included in said squares and areas.' The amendment was adopted.

"Senator Bowman moved to amend section 1, line 51, by striking out the words 'two-thirds of.' The amendment was adopted.

"Senator Wolf moved to amend section 1, line 37, by striking out the word 'six' and inserting in lieu thereof the word 'five.' The amendment was adopted.

"Senator Paulen moved to amend section 1, line 37, by striking out the word 'thirty' and inserting in lieu thereof the word 'ten.' The amendment was adopted.

"The question being, Shall the bill pass as amended? the roll was called, with the following result: Yeas 27, nays 3; absent or not voting, 10. [Names stated.]

"A constitutional majority having voted in favor of the passage of the bill, the bill passed, and the title was agreed to." (Senate Journal, 1913, pp. 760, 761.)

The house journal recites that the senate amendments were agreed to (House Journal, 1913, p. 1086), and that the committee on enrolled bills reported the bill as properly enrolled (House Journal, 1913, p. 1148). The original bill shows changes made with pen and ink corresponding to three of the amendments described in the senate journal, each being accompanied by the initials "S. A.," doubtless meaning "senate amendment." No change whatever was indicated with respect to the first amendment proposed by Senator Paulen—that striking out the provision making the city liable for one-third of the cost of paving the streets abutting on private property. The two amendments proposed by Senator Paulen and that proposed by Senator Bowman had the effect to make the law substantially the same in all respects as under the act of 1911.

The amendment proposed by Senator Wolf reduced the rate of interest on improvement bonds from six per cent, under the old law and the original house bill, to five per cent. The second amendment proposed by Senator Paulen related to the maximum maturity of such bonds, which was fixed at ten years by the old law, lengthened to thirty years by the original house bill, and restored to ten years by this amendment. The house bill attempted no substantial changes in the existing law except as already stated. The amendment proposed by Senator Bowman, striking out the words "two-thirds of," was necessary to give full effect to the amendment of Senator Paulen, which the journal recites had just been adopted. The provision that the city was to pay for one-third of the paving having been stricken out, it was necessary to change also the provision making the improved property liable for only two-thirds of the cost.

The recital of the senate journal is positive and explicit that the words expressly making the city liable for one-third of the paving cost were stricken out of the bill before it was voted upon. There is nothing in any part of the senate journal that in any way tends to impeach or contradict this entry. It is, however, in direct conflict with the enrolled bill. Even to support the published statute it can not be presumed that this Paulen amendment was in fact lost, and that the entry stating that it was carried was a mistake; because if this amendment had been voted down there could have been no possible occasion for, or purpose in, the Bowman amendment, striking out the words "two-thirds of." This second amendment was unquestionably carried, as is shown not only by the journal, but by the enrolled bill. And it can not be presumed that the Paulen amendment was reconsidered and voted down before the roll call, and that through error the journal fails to show the action; because if the senate had changed its mind in this respect, it would necessarily

have changed it also with regard to the Bowman amendment. That it did not do so is shown by the enrolled bill. The two amendments are substantially one. They are but parts of a single change in the policy of the measure. The old law required the improved property to pay all the expense of paving, except at street intersections. The original bill undertook to make the city liable for one-third and the property for two-thirds, by inserting additional words in two provisions, the one defining the liability of the city, the other that of the property owners. All parts of the record agree in showing that one of these was stricken out, and the conclusion is irresistible that this was done in order to defeat the essential purpose of the bill. True, if nothing were before us excepting the published statute, we might perhaps supply by interpretation the words "two-thirds of" which were stricken out by the Bowman amendment. But the fact that these words were once in the bill, and were deliberately taken out by the action of the senate, makes it clear that no assent was ever given by that body to the proposed change in legislative policy.

What actually happened seems too obvious to admit of a substantial doubt. The Paulen amendment was adopted by the senate and was never reconsidered. The Bowman amendment followed as a natural sequence. An entry of each was made on the journal. When the attempt was made to mark the original bill so as to show the several senate amendments, there was an inadvertent omission to show the striking out of the words covered by Senator Paulen's motion. It thus happened that the house of representatives was not informed of the adoption of this amendment. It voted to concur in the senate amendments, having no notice of the first and most important of them. The committee on enrolled bills, in reporting that the bill was properly enrolled, were correct so far as could be as-

certained from the information afforded by the papers in their hands.

Upon these grounds we think the conditions which must exist in order to impeach a published statute are fully met. The journal of the senate states positively that the bill in the form shown by the enrollment did not pass that body; an examination of the entire record not only fails to discredit the entry on the journal—it confirms it, and explains how the discrepancy between it and the enrolled bill was occasioned. Therefore it is shown clearly, conclusively and beyond all doubt that the act as published did not receive the approval of the senate and is not a valid law. Cases in which the rule has been applied under similar circumstances, but upon less convincing proof, are found in the note already referred to. (Note, 40 L. R. A., n. s., 25.)

The suggestion has been made that by an act which took effect at a later date than that under consideration the entire cost of paving (except at intersections) was laid upon the property benefited. (Laws 1913, ch. 112, § 1.) That act however, so far as relates to liability for the cost of paving, is an old statute, which was reënacted in 1913 as an incident to amendments having no bearing upon that matter. Its provisions on this subject would, therefore, not control new legislation of 1913. (Gen. Stat. 1909, § 9037, subdiv. 1.)

An argument has also been made to the effect that the statute as published does not require the payment by the city of one-third the paving cost. The adoption of the Bowman amendment gives a substantial basis for this contention, but the view taken of the matters already discussed renders a decision upon this point unnecessary.

The writ of mandamus is denied.

JOHNSTON, C. J. (dissenting): I dissent on the ground that, in my opinion, the enrolled statute is not impeached by the journals of the legislature. While

one entry in the journals conflicts with the enrolled bill another entry in the journals is to the effect that the bill was correctly enrolled. I think that the enrolled bill is better evidence of legislative action and more reliable than conflicting entries in the journals, even when supplemented, as is done in the prevailing opinion, by papers outside of the journals. Within former decisions of this court I am of opinion that the journals do not show clearly, conclusively and beyond all doubt that the act was not passed as enrolled and published.