Patrick v. Haskell County.

No. 23,250.

JAMES S. PATRICK, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS of the County of Haskell et al., *Appellees*.

SYLLABUS BY THE COURT.

1. STATUTES — *Relating to Relocation of County Seats — Evidence of Validity of Statute—Conflicts in Legislative Records*. The senate adopted an amendment to a bill which had passed the house; the published journal, the original bill with the amendment thereto attached, the engrossed bill, the enrolled bill, and the published law agree concerning the language of the amendment, but the memorandum or original journal on file in the office of the secretary of state and the published daily journal differ therefrom. *Held*, that the memorandum or original journal is not sufficient to show that the language of the amendment was different from the language of the law as published.

2. BOARD OF COUNTY COMMISSIONERS—*Special Session—How Called*. A special session of a board of county commissioners may be legally called on the request of the chairman of the board and one other member where the request and the call are in writing, and the call is signed by the chairman and is then shown to the third member of the board in time for him to attend the meeting at the time and place named.

3. ACTING COUNTY COMMISSIONER — *De Facto Officer — Authority Questioned Only by the State*. The acts of one who is county commissioner *de jure* or *de facto* are binding on all the people of the county, and his authority to act as a *de facto* officer cannot be questioned by anyone except the state.

Appeal from Haskell district court; CHARLES E. VANCE, judge. Opinion filed December 11, 1920. Affirmed.

*Clad Hamilton*, and *Clay Hamilton*, both of Topeka, for the appellant.

*C. G. Dennis*, of Sublette, *Bennett R. Wheeler, S. M. Brewster*, and *John L. Hunt*, all of Topeka, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, a citizen and taxpayer of Haskell county, commenced this action to enjoin the removal of the county seat of that county from Santa Fe to Sublette. A county-seat election had been called but had not been held at the time the action was commenced. A temporary injunction was denied, and the plaintiff appeals.

1. The first contention argued is that the law under which the election was called, chapter 25 of the Laws of 1920, was not passed as required by the constitution, in that the senate voted on one bill and the house voted on another. The controversy revolves around the terms of an amendment made in the senate to the bill. That part of chapter 25 under consideration reads: "*Provided,* In counties having a population of less than 2,000 an election may be called at any time *after two years from* the last preceding legal election." The original or memorandum journal of the senate on file in the office of the secretary of state, of which journal we take judicial notice, showing the record of the adoption of the amendment to the bill, contains the following: "*Provided,* In counties having a population of less than 2,000 an election can be called at any time *within two years after* the last preceding legal election." The daily printed journal of the senate distributed to the members under the rules is the same. The published journal of the senate for the special session of 1920 at page 74 contains the following paragraph:

"Senator Doerr moved to amend House bill No. 106 in section 1, line 32, by inserting after the word 'seat' the following: '*Provided,* In counties having a population of less than 2,000 an election may be called at any time *after two years from* the last preceding legal election.' The motion prevailed."

The rules of the senate provided that "all amendments to bills and resolutions shall be reduced to writing and read by the secretary before the same shall be put." The original bill with the amendment reads exactly as it does in the published laws. A slip attached to the original bill, evidently the amendment that was adopted by the senate, reads: "Provided in counties having a population of less than 2,000 an election may be called at any time *after two years from* the last preceding legal election." The enrolled bill is the same, likewise the engrossed bill, engrossed after it had passed both houses. The difference in the language is that in the published laws, in the final published journal of the senate, in the original bill with its amendment, in the engrossed bill, and in the enrolled bill, the language used is "any time *after two years from* the last preceding legal election"; while the memorandum journal and the printed daily journal read: "At any time *within two years after* the last preceding legal election."

The order of business set out in the rules of the senate provides for the "correction and approval of the journal," but it does not affirmatively appear that the journal for this day's proceedings was ever corrected or approved.

The rule which the plaintiff seeks to invoke was declared in *Ziegler v. Junction City*, 90 Kan. 856, 136 Pac. 223, as follows:

"An enrolled bill, signed by the governor and published as a statute, may be held not to be a valid enactment, where words which it contains, and which are essential to its operation, are shown by the journal of one of the branches of the legislature to have been stricken out by amendment before the bill passed that body, and where other record evidence confirms the correctness of the entry on the journal, and accounts for the discrepancy between it and the enrolled bill." (Syl.)

Again in *The State, ex rel., v. Francis, Treas.*, 26 Kan. 724:

"The enrolled statute on file in the office of the secretary of state is very strong presumptive evidence of the regularity of the passage of the statute, and of its validity; and it is conclusive evidence of such regularity and validity, unless the journals of the legislature clearly, conclusively and beyond all doubt, show that the act was not passed regularly or legally. If there is any room to doubt as to what the journals of the legislature show, if they are merely silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid. But in this state, where each house is required by the constitution to keep and publish a journal of its proceedings, the courts cannot wholly ignore such journals as evidence. They must be given some weight in determining the regularity and validity of the passage of statutes; and therefore, where there can be no room for doubt, from the evidence furnished by such journals, that the statute was not passed by a constitutional majority of the members of either house, then the courts may declare that the supposed statute was not legally passed, and is invalid." (Syl. ¶ 1.)

Again in *Railway Co. v. Simons*, 75 Kan. 130, 88 Pac. 551:

"While courts may look to the journals of a legislature as well as to the evidence furnished by an enrolled bill to determine whether a challenged act received the required number of affirmative votes, such acts, when approved, certified and authenticated as the constitution requires, cannot be overthrown by reason of entries in a journal which are themselves contradictory and of doubtful import." (Syl. ¶ 1.)

In *In re Taylor*, 60 Kan. 87, 55 Pac. 340, Mr. Chief Justice Doster, speaking for the court, said:

"It is no reflection upon legislative integrity, no criticism of legislative methods, to say that the journals of the houses are often carelessly, inaccurately and partially kept. They are often hurriedly made up,

written by clerks having little aptitude for the work and slight sense of responsibility in its performance. Upon many days, especially as the session advances, the business accumulates, the saving of time becomes important, and the reading of the journal of the preceding day is dispensed with, ·so that mistakes fail of correction and unfortunately pass into forms of legislative history. It is also a notorious fact that in many cases, to a great extent in all cases, the journals are not made up until after the legislative session has closed. They are then put into such methodical shape as can be done, made up of the loose and disconnected memoranda noted from day to day as the legislative session progressed." (p. 93.)

This language was quoted with approval in *The State v. Andrews,* 64 Kan. 474, 485, 67 Pac. 870.

In the present case the final published journal, the original bill, the amendment as attached thereto, the engrossed bill, and the enrolled bill, sustain the law as found in the session laws. The law is contradicted by the original or memorandum journal and by the printed daily journal of the senate. The law has not been impeached in the manner declared necessary by the decisions of this court. The most that can be said is that only a suspicion has been cast on the validity of the law as published. Instead of being impeached, it is sustained; the memorandum and daily journal of the senate are impeached, and it is almost conclusively shown by matters of which this court takes judicial notice that the memorandum and printed daily journal are not correct.

2. It is urged that the special meeting of the board of county commissioners at which the election was ordered was illegal. A written request for the call of the meeting for the purpose of ordering the election was signed by W. W. Ward and Henry Johnson, two members of the board, and the call for the meeting ·was signed by Henry Johnson, chairman. It was shown by the chairman to Jap Scott, the third member of the board, in sufficient time, for him to reach the county seat and attend the meeting. The meeting was called for three o'clock, and Scott said that if he didn't get there at three o'clock he probably would not come at all. He did not attend the meeting. The plaintiff invokes the rule declared in *P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.,* 16 Kan. 302, where this court said:

"A special session [of the board of county commissioners] may be convened upon the call of the chairman at the request of two members;

but personal notice of such call must be served, if practicable, upon every member of the board." (Syl. ¶ 3.)

In the present case the meeting was called by the chairman of the board at the request of himself and another member. Personal notice was served on the third member of the board, and the two members who called the meeting attended it. The call complied with the rule declared in the Anderson county case, and the meeting of the board of county commissioners was legal.

3. It is argued that W. W. ·Ward, one of the commissioners, had removed from Haskell county and had vacated his office by ceasing to be an inhabitant of that county. On that question evidence was introduced, from which the trial court must have found that Ward was a resident of that county or that he was a *de facto* county commissioner thereof. Either finding would be conclusive. If he was only a *de facto* officer, the plaintiff cannot question his acts. (*Hale v. Bischoff*, 53 Kan. 301, 302, 307, 36 Pac. 752; *Railway Co. v. Preston*, 63 Kan. 819, 824, 66 Pac. 1050; *The State v. Miller*, 71 Kan. 491, 492, 80 Pac. 947.) Under the law in this state the authority of W. W. Ward to act as a county commissioner of Haskell county cannot be questioned by anyone except the state. (*The State v. Williams*, 61 Kan. 739, 60 Pac. 1050; *Campbell v. Sargent,* 85 Kan. 590, 594, 118 Pac. 71.)

The judgment is affirmed.