School District v. Board of Education.

No. 24,016.

SCHOOL DISTRICT No. 37 OF RICE COUNTY, *Appellant,* v. THE BOARD
OF EDUCATION OF THE CITY OF LYONS, Being School District
No. 69, *Appellee.*

SCHOOL DISTRICT No. 70 OF RICE COUNTY, *Appellant,* v. THE BOARD
OF EDUCATION OF THE CITY OF LITTLE RIVER, Being School Dis-
trict No. 28 of Rice County, *Appellee.*

### SYLLABUS BY THE COURT.

1. HOUSE BILL No. 48—*Laws of 1921 Providing for Disorganization of Certain
   School Districts—Legally Enacted.* The legislative journals show affirma-
   tively that house bill No. 48 was passed by the house and messaged to the
   senate where five or six amendments were adopted in committee of the
   whole, the bill was reëngrossed, duly passed, messaged back to the house,
   which refused to concur in the amendments and a conference committee
   was appointed, which reported to the senate recommending that the sen-
   ate recede from certain of its amendments and that the house accept the
   other amendments. The senate adopted the conference report on roll call
   duly taken and entered on the journal. The bill with conference report
   was messaged to the house which on the same day adopted the conference
   report on a roll call which was duly entered in the journal. The enrolled
   bill, signed by the president and secretary of the senate, the speaker and
   chief clerk of the house, approved by the governor and published, is
   worded the same as the reëngrossed bill in the senate with all the senate
   amendments to the original bill. The house journal of the proceedings of
   the day following the adoption by the house of the bill and conference
   report, contains a report from the chief clerk stating that he had com-
   pared six house bills, including house bill No. 48, with the enrolled bills;
   that the same were correctly enrolled as passed, had been properly signed
   by the officers of the house and senate, and had been that day presented to
   the governor for his approval. *Held,* the recital in the house journal of
   the report of the chief clerk is entitled to as much consideration as another
   coming from the same source, and the effect of the consideration of all the
   recitals of the journals of both houses is merely to cast a doubt upon the
   validity of the act, and therefore, following *Belleville v. Wells,* 74 Kan. 823,
   88 Pac. 47, and cases cited in the opinion; *The State, ex rel., v. City of
   Salina,* 108 Kan. 271, 194 Pac. 931, and *Patrick v. Haskell County,* 108 Kan.
   141, 193 Pac. 1061, the doubt must be resolved in favor of the validity of the
   enrolled bill.

2. SAME—*Statute—Has Both Retroactive and Prospective Operation.* By the
   enactment of chapter 228, Laws of 1921, amending section 1 of chapter 275
   of the Laws of 1917 the legislature unequivocally expressed the intention
   to give to the amendment a retroactive as well as a prospective operation.

3. SCHOOL DISTRICTS—*Possess No Vested Rights as Against the State.* There
   is no vested right in the existence of a *quasi*-municipal corporation such as
   a school district. Its rights and franchises, having been granted for the
   purposes of government, can never become such vested rights as against
   the state that they cannot be taken away. The legislature has authority
   to amend their charters, enlarge or diminish their powers, extend or limit
   their boundaries, consolidate two or more under one, overrule their legis-
   lative action whenever it is deemed unwise, impolitic, or unjust, and may
   abolish them altogether.

4. STATUTE—*Chapter 228, Laws of 1921, General in Its Application.* Chapter 228 of the Laws of 1921 applies to all school districts where the conditions are those mentioned in the act, and is general, and not special legislation.

Appeals from Rice district court; DANIEL A. BANTA, judge. Opinion filed February 11, 1922. Affirmed.

*F. L. Martin,* of Hutchinson, for the appellants.
*W. W. Stahl,* and *Samuel Jones,* both of Lyons, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The purpose of these actions in *quo warranto* is to defeat the consolidation of certain school districts. On June 25, 1921, the superintendent of public instruction of Rice county, in conjunction with the county commissioners, disorganized district No. 37 and attached to it school district No. 69, which is under the jurisdiction of the board of education of the city of Lyons. A like order was made disorganizing school district No. 70 and attaching it to the board of education of Little River, which is school district No. 28. The appeals are from orders overruling plaintiffs' motion for judgment on the pleadings.

The consolidations were made under chapter 228, Laws of 1921. The first and principal contention of the plaintiffs is that the act was not passed in conformity with sections 10, 13 and 14 of article 2 of the constitution.

The act is amendatory of section 1 of chapter 275, Laws of 1917, providing for the disorganization of school districts which "shall fail or neglect to maintain a school for at least seven months in each year for a period of three successive years," and authorizing the county superintendent to make an order attaching such district to an adjoining district under certain conditions. Section 1 of the new act, with portions italicized showing the changes made by the amendment, reads:

"Whenever any school district shall *have failed or neglected* to maintain a school for at least seven months in each year for a period of *two successive* years, such school district shall be disorganized by the county superintendent of public instruction in conjunction with the county commissioners and the territory thereof shall be attached to adjoining districts, *as may be determined* by the county superintendent: *Provided,* That this act shall not apply to any school district which shall have made provision according to law for sending its pupils to other schools and for the payment of adequate transportation and tuition, unless such district shall be adjacent to a school district maintaining a graded school in which is offered an approved high-school course of at least two years. Whenever any school district adjacent to a district main-

taining a graded school in which is offered an approved high-school course of at least two years shall fail or neglect to maintain a school for at least seven months in each year for a period of two consecutive years, said adjacent district shall be disorganized by the county superintendent of public instruction, in conjunction with county commissioners, and the territory thereof shall be attached to the district maintaining such graded school in which is offered an approved high-school course of at least two years, or to adjoining districts, in the discretion of the county superintendent: *Provided further,* That where any such district is adjacent to a city of the third class in which there is maintained a high school or graded school, it shall be attached to the school district in which such city is located." (Laws 1921, ch. 228, § 1.)

The legislative history of the bill shows that it originated in the house as house bill No. 48 and went through the regular channels. The bill was messaged to the senate where it was amended by striking out the words "shall fail or neglect" and inserting in lieu thereof the words "shall have failed or neglected" and by striking out the word "three" in two places and inserting in lieu thereof the word "two," so that the act would apply to any school district "which shall have failed or neglected for two successive years to maintain a school for at least seven months in each year." (Senate Journal, 1921, p. 276.) The bill as amended by the senate was re-engrossed and messaged to the house. In the house, Mr. Sanderson moved that the house "do not concur in the senate amendments," and ask for a conference. The motion prevailed and a conference committee was appointed. (House Journal, 1921, p. 385.) The senate acceded to the request for a conference and appointed its committee. (House Journal, 1921, p. 399.) The conference committee made its report to the senate to the effect that the senate receded from its amendment putting in the word "two" in place of "three"; receded from its amendment "in conjunction with the county commissioners" where it occurred in the bill in two places, and that the house acceded to the other amendments, accepting the words "shall have failed or neglected," and accepted the proviso at the end of the section. The report of the conference committee was adopted in the senate, the roll was called, and a yea and nay vote was taken and entered on the journal. (Senate Journal, 1921, p. 349.) On February 28, the bill and conference report was messaged to the house. (House Journal, 1921, p. 418.) On the same day the house adopted the conference report on roll call with a yea and nay vote. (House Journal, 1921, p. 423.) The house journal of the proceedings of March 1 contains under the heading, "Report on Enrolled Bills," the following:

"Mr. Speaker: Your chief clerk begs leave to report that he has compared House bills Nos. 291, 378, 193, 97, 48 and 330 with the enrolled bills, and reports to the House that the same are correctly enrolled as passed, that they have been properly signed by the president and secretary of the Senate and the speaker and chief clerk of the House, and have been presented to the governor for his approval, this 1st day of March, 1921.

Lisle McElhinney, *Chief Clerk."*

(House Journal, 1921, p. 441.)

The governor's message that he had signed the bill appears in house journal, page 452.

A comparison of chapter 228, signed by the governor and published, with the bill as amended by the senate and shown by the report of the conference committee, would indicate that the chief clerk, through some mistake, copied the bill as amended and passed by the senate instead of the one amended by the conference committee and passed by the house and senate.

Plaintiffs contend that while the enrolled bill is fair enough on its face, its verity as conclusive evidence of its passage and validity is completely overthrown by the journals of the house and senate and by the yea and nay vote which was taken in each house. So far as the legislative journals show affirmatively, it is true that the bill which should have been enrolled was the bill passed by the adoption of the report of the conference committee. An examination of the original bill on file in the office of the secretary of state and the reëngrossed bill passed by the senate which is attached thereto, with the memoranda showing the various amendments in both house and senate, leaves no doubt that the bill as signed by the governor and published is the same bill as it was amended in the senate. In support of the validity of the act as signed and published, the trial court attached much importance to the report of the chief clerk to the effect that he had compared house bill No. 48 with the enrolled bill, and that the same was correctly enrolled as passed, that it had been properly signed by the president and secretary of the senate, the speaker and chief clerk of the house, and had been on that day presented to the governor for his approval. On the other hand, plaintiffs contend that it is the enrolled bill itself and the fact that it is signed by the governor that imports verity, and not what the chief clerk may have reported to the house.

The plaintiffs rely upon the case of *Ziegler v. Junction City,* 90 Kan. 856, 136 Pac. 223, the syllabus of which reads:

"An enrolled bill, signed by the governor and published as a statute, may

be held not to be a valid enactment, where words which it contains, and which are essential to its operation, are shown by the journal of one of the branches of the legislature to have been stricken out by amendment before the bill passed that body, and where other record evidence confirms the correctness of the entry on the journal, and accounts for the discrepancy between it and the enrolled bill."

In the body of the opinion it was said:

"What actually happened seems too obvious to admit of a substantial doubt. The Paulen amendment was adopted by the senate and was never reconsidered. The Bowman amendment followed as a natural sequence. An entry of each was made on the journal." (p. 861.)

After referring to other omissions, it is said:

"The committee on enrolled bills, in reporting that the bill was properly enrolled, were correct so far as could be ascertained from the information afforded by the papers in their hands. Upon these grounds we think the conditions which must exist in order to impeach a published statute are fully met. The journal of the senate states positively that the bill in the form shown by the enrollment did not pass that body; an examination of the entire record not only fails to discredit the entry on the journal—it confirms it, and explains how the discrepancy between it and the enrolled bill was occasioned." (p. 861.)

In the case at bar the legislative journals show affirmatively that house bill No. 48 was passed by the house and messaged to the senate, where five or six amendments were adopted in committee of the whole, the bill was reëngrossed, duly passed, messaged back to the house, which refused to concur in the amendments, and a conference committee was appointed, which reported to the senate recommending that the senate recede from certain of its amendments and that the house accept the other amendments. The senate adopted the conference report on roll call duly taken and entered on the journal. The bill and conference report was messaged to the house, which on the same day adopted the conference report on a roll call which was duly entered in the journal. The enrolled bill, signed by the president and secretary of the senate, the speaker and chief clerk of the house, approved by the governor and published, is worded the same as the reëngrossed bill in the senate with all the senate amendments to the original bill. The house journal of the proceedings of the day following the adoption by the house of the bill and conference report, contains a report from the chief clerk stating that he had compared six house bills, including house bill No. 48, with the enrolled bills; that the same were correctly en-

rolled as passed, had been properly signed by the officers of the house and senate, and had been that day presented to the governor for his approval.

We think the trial court was correct in holding that one recital in the house journal is entitled to as much consideration as another coming from the same source; and that the effect of the consideration of the report of the chief clerk and the other recitals of the journals of both houses is merely to cast a doubt upon the validity of the act, and therefore, under numerous decisions, is not sufficient to overcome the presumption that the act was lawfully passed.

In *Belleville v. Wells*, 74 Kan. 823, 88 Pac. 47, it was ruled:

"The legislative journals leaving it doubtful whether the title to an act as it appears by the enrolled bill is the same title the bill had when it passed the house and senate, the doubt must be resolved in favor of the enrolled bill and the validity of the act upheld." (Syl. ¶ 2.)

In the opinion it was said:

"This court has laid down the rule that before an enrolled bill can be impeached successfully by the journals of the legislature, the latter must show affirmatively, clearly, conclusively and beyond all doubt that the bill as enrolled was not the bill passed. (*The State, ex rel., v. Francis, Treas'r*, 26 Kan. 724; *Weyand v. Stover, Treas.*, 35 Kan. 545, 11 Pac. 355; *In re Vanderberg, Petitioner, etc.*, 28 Kan. 243; *The State v. Andrews*, 64 Kan. 474, 68 Pac. 668.) Also, that the records of the legislative journals import absolute verity, and are conclusive as to the facts therein affirmatively shown. (*Division of Howard Co.*, 15 Kan. 194; *County-seat of Linn Co.*, 15 Kan. 500.)" (p. 824.)

(See, also, *The State, ex rel., v. City of Salina*, 108 Kan. 271, 275, 194 Pac. 931; *Patrick v. Haskell County*, 108 Kan. 141, 193 Pac. 1061.)

There is no provision of our constitution which declares that the journals of both houses shall show the concurrence of one branch of the legislature in an amendment to a bill made by the other branch, and it has been held that the silence of the journals as to such concurrence in an amendment that appears in an enrolled bill is not sufficient to defeat it. It was held in *In re Taylor*, 60 Kan. 87, 65 Pac. 340, that where the journal entries relating to the adoption of an amendment that appears in an enrolled bill are contradictory the bill will be sustained upon the presumption of regular enactment.

In *Weis v. Stubblefield*, 85 Kan. 199, 116 Pac. 205, it is said:

"The contention that the act is invalid because the senate and house did not coöperate and both pass the act as it was enrolled, approved and pub-

lished cannot be sustained. The presumption of validity which goes with the enrolled bill is not overcome by the silence, defects or seeming inconsistencies between the senate and house journals. (*The State, ex rel., v. Francis, Treas'r,* 26 Kan. 724; *In re Taylor,* 60 Kan. 87; *The State v. Andrews,* 64 Kan. 474; *Railway Co. v. Simons,* 75 Kan. 130.)" (p. 201.)

The supreme court of Arkansas has held that in the absence of a constitutional provision that the journals shall show amendments to bills, the fact that an enrolled bill does not contain an amendment which the journals show was passed, will not render the bill void, because of the presumption that such amendment was reconsidered and receded from. (*Burks v. Jefferson County,* 40 Ark. 200.) So, in this case, in order to uphold the validity of the bill as enrolled and signed by the governor, the court must assume that after the proceedings mentioned in the journals of the two houses, the legislature reconsidered the matter. and passed the bill which the chief clerk reported had been passed and certified to the governor. In order to sustain the plaintiffs' contention respecting the constitutionality of this act, it would be necessary for the court to say that one of the two contradictory statements in the house journal has been conclusively, clearly, and beyond doubt shown to be true, and necessarily that the other is false. As was said in *Patrick v. Haskell County,* supra:

"The most that can be said is that only a suspicion has been cast upon the validity of the law as published." (p. 144.)

*Second:* It is contended that the act, if constitutional, was not intended to be retroactive. It is conceded that there is no constitutional inhibition against the enactment of a retroactive law, and that such an act is valid unless the effect thereof be to disturb vested rights.

It is true that—

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (*Douglas County v. Woodward,* 73 Kan. 238, syl. ¶ 1, 84 Pac. 1028.)

The history of the legislation upon the subject of the consolidation of school districts situated as the plaintiff districts were, satisfies us that the legislature intended this act to have both a retroactive and prospective operation. The legislature was confronted with a condition. It fully understood that there were school districts which for years had failed to maintain a school but had

taken advantage of the school maintained by an adjoining district merely by paying the tuition of the children of school age in their own district, a sum in the aggregate which would amount to but a small proportion of the cost of maintaining a separate school. The former act of which this is amendatory used the language "shall fail or neglect." To change this situation was one of the controlling purposes in the adoption of that part of the amendment which uses the expression "whenever a school district shall have failed or neglected to maintain a school," etc. By the use of the future-perfect tense, we think it was the intention of the legislature that the law should apply "whenever" or "as soon as" a situation arises where it may be said of a school district that for two years it has failed or neglected to maintain a school of a certain standard, the district may be disorganized and consolidated with a school district which maintains a regular high-school course. "Whenever" is an adverb of time and is often used as the equivalent of "as soon as." (Bouvier's Law Dictionary, Rawle's 3d Rev., citing *Robinson v. Greene,* 14 R. I. 181, 188.)

*Third:* The petition in each of the cases alleged that the plaintiff district at the annual meeting in April, 1921, made provision by a unanimous vote of the electors for sending the pupils of the district to other schools and for payment of the transportation and tuition for them, and made a levy of taxes to meet the expenses. It is contended that the act, if given a retroactive operation destroys the vested right of the district to exercise its corporate functions.

In *School District v. Board of Education,* 16 Kan. 536, an act of the legislature empowering the board of education of a city of the second class to attach to it for school purposes adjacent territory upon the application of a majority of the electors of such territory was under consideration. In the opinion, Justice Brewer, speaking for the court, asked the question, "What provision of the constitution does this violate?"

"The school district from which this territory was detached, does not own it. Neither does such territory become the property of the city when attached to it. The property remains the property of the same individuals after as before the change. All that is done is, to change the territory from one school district to another. Power to change school-district boundaries seems to be as full in the legislature, as the power to change county boundaries; and as to that, see the recently decided cases of *Division of Howard Co.,* 15 Kan. 194, and *Commr's of Sedgwick county v. Bunker,* ante, p. 498. The county su-

perintendent is given power to create new school districts, or change the boundaries of old. No provision is made for notice. (Gen. Stat., p. 915, § 10.) Yet can there be any question of the validity of his acts in these matters? It may be that at times grievous wrong is done by the legislature in changing the boundaries of counties, or school districts, but that is a matter beyond the power of the courts to control." (p. 540.)

In Cooley's Constitutional Limitations, 6th ed., it is said:

"The creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the state of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether in the legislative discretion, and substitute those which are different. The rights and franchises of such a corporation being granted for the purposes of government, can never become such vested rights as against the state that they cannot be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. Restraints on the legislative power of control must be found in the constitution of the State, or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right through the ballot-box all these wrongs." (p. 228.)

The fact is there is no vested right in the existence of a municipal corporation. To put it another way, the existence of a municipal corporation is not a vested right. A school district is a mere *quasi* municipal corporation and municipal corporations generally "are mere agencies of government, and, except as specially restrained by other constitutional restrictions, are within the continued exclusive control of the legislature. Counties and towns are, as to their corporate existence, completely within such control. They may be changed, altered, enlarged, diminished or extinguished by the mere act of the legislature." (Sutherland on Statutory Construction, p. 615.)

*Fourth:* It is suggested, but the point is not pressed, that the act is special legislation. We think it is apparent from the title and the body of the act that it is general. It applies to all school districts in the state where the conditions are those mentioned in the act and it appears that there are two districts in Rice county alone to which the act applies. Doubtless there are many others where the conditions are similar and in the future it is probable that there

will be other districts where the act would find a proper field for operation.

Since the act is not unconstitutional for any of the reasons mentioned, it follows that in neither of these cases can the plaintiff recover. The judgments are affirmed.

PORTER, J. (dissenting): I feel constrained to dissent from the first paragraph of the syllabus and the corresponding part of the opinion. The principal contest between the house and the senate .was over three main provisions of the bill. The house desired to have the bill provide that whenever a school district *"shall fail or neglect"* for three years to maintain a school for at least seven months in each year, the district might be disorganized and consolidated with another district where a proper school was maintained, and that the power to disorganize and consolidate should be lodged in the county superintendent. The supporters of the bill in the senate wanted the amendment to read *"shall have failed or neglected for two years,"* in order that advantage might be taken of existing conditions; also that the power be exercised by the county superintendent, "in conjunction with the board of county commissioners." The senate also wanted the proviso "That where any such district is adjacent to a city of the third class in which there is maintained a high school or.grade school, it shall be attached to the school district in which such city is located."

The rules of both houses provide for the appointment of a committee on enrolled bills, and the journals of both houses show that the usual custom is for reports on enrolled bills to be made by the chairman of that committee. In this instance the journal shows that the chief clerk, in his own name, reported to the house (no action being taken thereon) that he had compared certain bills, including house bill No. 48, with the enrolled bills, etc.

I think that, within the doctrine of the case of *Zeigler v. Junction City,* cited in the opinion, we can say: "What actually happened seems to obvious to admit of a substantial doubt." The chief clerk, in making this report, held in his hand the documents (now on file in the office of the secretary of state), the reëngrossed bill as passed the first time by the senate, to which was attached the original house bill, the report of the conference committee; and it was the reëngrossed senate bill with all its amendments, to which he had procured the signatures of the officers of the house and senate, which

he certified to the governor for approval. The enrolled bill as signed and published is the bill amended and passed by the senate, and contains, of course, none of the amendments agreed upon in conference and adopted by both houses. The house adopted the conference report by a yea and nay vote, February 28, and the vote was duly entered on the journal of that date. To uphold the act upon the theory that between that day and the day following the house changed its views; that both houses then passed the act as enrolled and published, requires the court to indulge in what seems to me, to be an unnatural and violent presumption.