No. 69,309

MARTY LOUIS KENYON, *Appellant*, v. KANSAS POWER & LIGHT
COMPANY, d/b/a KPL Gas Service Company, *Appellee*.

(864 P.2d 1161)

Opinion filed December 10, 1993.

*Donald W. Vasos*, of Law Offices of Donald W. Vasos, of Kansas City,
argued the cause, and *David A. Hoffman*, of the same firm, and *Mark J.
Sachse*, of Kansas City, were with him on the briefs for appellant.

*Gregory A. Lee*, of Gehrt & Roberts, Chartered, of Topeka, argued the cause, and *Jeffrey S. Southard* and *Diana G. Edmiston*, of Kansas Power & Light Co., of Topeka, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Plaintiff, Marty Louis Kenyon, appeals from an adverse jury verdict in this personal injury action, claiming that the trial court's application of the provisions of the Overhead Power Line Accident Prevention Act (OPLA), K.S.A. 66-1701 *et seq.*, constituted reversible error. He contends that OPLA was improperly enacted under Article 2, § 14 of the Kansas Constitution and is, therefore, void.

On November 29, 1990, plaintiff was injured when the metal ladder he was moving at a work site came into contact with an overhead power line. Kenyon filed this action against Kansas Power & Light Company (KP&L), seeking compensation for his injuries. The trial court instructed the jury in accordance with the provisions of OPLA, and the jury returned a verdict assessing zero percent fault against KP&L.

During the 1990 legislative session, the House Appropriations Committee introduced H.B. 3086, "The Overhead Power Line Accident Prevention Act." Section 6 (b) (which is now K.S.A. 66-1706[b]) was not included in the version passed by both houses of the Kansas Legislature:

"In a civil action in a court of this state when it is shown by competent evidence that damage to any high voltage overhead line owned or operated by a public utility, a personal injury or other damages occurred as a result of a violation of this act, there shall be a rebuttable presumption that the person violating the provisions of this act was negligent as a result of such violation."

When the enrolled bill was returned by the printer to the legislature, section 6(b) was included. Apparently this went undetected and the enrolled bill, with section 6(b), was signed by the officers of the Senate and the House, sent to Governor Hayden for his signature, and signed by the Governor.

There is no dispute that both houses of the Kansas Legislature passed a version of OPLA that did not contain K.S.A. 66-1706(b). There also is no dispute that the House and Senate officers signed a version of the bill that erroneously contained K.S.A. 66-1706(b).

The governor signed the version of the bill containing K.S.A. 66-1706(b). Thus, the bill that passed both houses of the legislature was not the bill signed by the governor.

The trial court found that K.S.A. 66-1706(b) was invalid but severable, "leaving the remainder of the Act valid, enforceable and applicable." Plaintiff argues that the entire Act is unconstitutional because it was not enacted in accordance with Article 2, § 14 of the Kansas Constitution.

Article 2, § 14 of the Kansas Constitution provides in pertinent part:

"(a) Within ten days after passage, every bill shall be signed by the presiding officers and presented to the governor. If the governor approves a bill, he shall sign it."

According to Article 2, § 13 of the Kansas Constitution, a bill is "passed" when a majority of the members of each house vote in the affirmative in support of the bill. Thus, our Constitution requires that the bill presented to the governor be the bill on which both houses of the legislature agreed. Because the bill signed by Governor Hayden contained section 6(b) and was not the bill passed by the legislature, plaintiff argues that the entire enactment is unconstitutional and void.

Before discussing this contention, we note that the 1993 legislature repealed K.S.A. 66-1701 through 66-1708 and enacted a new bill that includes a version of the previously deleted section 6(b). See L. 1993, ch. 119, § 6. Governor Finney signed H.B. 2410 on April 5, 1993. That statute is not at issue in this case.

Our decision in *Harris v. Shanahan*, 192 Kan. 183, 387 P.2d 771 (1963), resolves the issue in this case. In *Harris*, as here, the governor signed a bill that differed from the bill passed by the legislature. In addressing the constitutionality of the law signed by the governor, we summarized the rules applicable to Article 2, § 14 that govern transfer of a bill introduced in a legislature into law:

"[T]he legislature and the governor exercise co-ordinate functions in enacting laws, and the governor is an essential part of the legislation. [Citations omitted.] . . . [U]ntil a bill has the final consideration of the three law-making powers, that is, the house, the senate, and the governor, it is not a law. [Citations omitted.] . . . . [A] bill never becomes a law until the

constitutional prerequisites respecting the manner of enactment have been fully complied with." 192 Kan. at 194.

We concluded in *Harris* that we did not have the power to change the statute so that it conformed with the bill that the legislature passed:

"The long and short of this case is that the bill passed by both houses of the legislature was not the bill approved and signed by the governor and this court has no authority to insert what was omitted. The requirements of Article 2, Section 14, are mandatory that the governor sign the same bill which passed the legislature. It follows that the enrolled bill the governor signed . . . was not made into law in the form and manner prescribed, and is a void enactment.

". . . It is lamentable that error on the part of engrossing clerks and legislative committees should defeat the action of the legislature. But the strict rule calling for full compliance with constitutional requirements is, in the long run, a good one. In some cases it may work a hardship, but, by and large it is beneficial to our republican form of government." 192 Kan. at 200.

Accord *Ziegler v. Junction City*, 90 Kan. 856, 136 Pac. 223 (1913) (invalidating enactment signed by the governor because it was never passed by the senate).

KP&L attempts to distinguish *Harris* and its predecessors, arguing that there is no constitutional infirmity that affects the entire bill in this case. According to its contention, the governor signed the bill passed by the legislature because the bill he signed contained everything that was in the bill the legislature passed, although it just happened to contain an additional provision, section 6(b). According to KP&L's argument, because the legislature did not pass the additional provision, it was never properly before the governor and may be severed from OPLA.

KP&L's argument fails to acknowledge that the bill presented to the governor was different from the bill passed by the legislature. The bill signed by the governor contained a provision that the legislature had deleted. Although the legislature's intent may be clear, the governor's intent is not. We have no way of knowing whether the governor would have signed the bill if it had not contained section 6(b). If we were to adopt KP&L's reasoning, we would be minimizing the importance our constitution vests in the governor of this state in the process of enacting laws

governing the citizens of this state. The legislature and the governor are equally important:

"In the making of laws under our constitution, the governor and the legislature are coordinate branches. That is the way the writers of the constitution intended it should be. The one is about as important as the other. The court will not for reasons of expediency reach a conclusion that will enable either one to bypass the other." *State, ex rel., v. Robb*, 163 Kan. 502, 515-16, 183 P.2d 223 (1947).

KP&L attempts to distinguish *Harris* and *Robb* on the basis that in those cases the court declined to add language to a statute. KP&L contends that deleting language, as it suggests in this case, is different from adding language. KP&L also argues that *Ziegler* is distinguishable because it involved a bill that was not approved by one of the houses of the legislature, whereas the bill in this case that was enacted by the legislature was not signed by the governor.

These are distinctions without a difference. Although this court has the power to delete unconstitutional language from an otherwise valid legislative enactment, the deletion of section 6(b) in this case will not make the Act constitutional. The constitutional infirmity is the manner in which the bill was enacted. We are unable to correct that infirmity by making the language in the Act match the language of the house bill passed by both houses of the legislature. The infirmity is that the governor did not have the opportunity to review and approve or veto the Act *as passed by the legislature.*

KP&L also argues and the trial court agreed that section 6(b) properly may be severed, leaving intact the remainder of the Act under general common-law principles of severability and in light of the severance clause contained in OPLA. Severability, however, becomes an issue only when a portion of a constitutionally enacted law is deemed to be unconstitutional. Each of the cases KP&L cites involved severance of an unconstitutional portion of an otherwise valid legislative enactment. *State ex rel. Stephan v. Carlin*, 229 Kan. 665, 630 P.2d 709 (1981) (severing portion of act that violated one-bill/one-subject rule); *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980) (severing portion of act that contained an unconstitutional delegation of legislative power); *State v. Next Door Cinema Corp.*,

225 Kan. 112, 587 P.2d 326 (1978) (severing unconstitutionally vague portion of statute); *Wall v. Harrison*, 201 Kan. 600, 443 P.2d 266 (1968) (severing portion of act that unconstitutionally extended the terms of county officers beyond that allowed by constitution); *State, ex rel., v. Owens*, 197 Kan. 212, 416 P.2d 259 (1966) (severing as unconstitutional portion of act authorizing commitment of juvenile offenders to state industrial reformatory); *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P.2d 836 (1958) (severing unconstitutional language in otherwise valid enactment); *State v. Goza*, 4 Kan. App. 2d 309, 605 P.2d 594 (1980) (severing unconstitutionally vague portion of statute).

Unconstitutional provisions in otherwise valid statutes may be severed under appropriate circumstances. That is not, however, the issue before the court. We are presented here with an entire Act that was enacted in a manner that did not satisfy our constitutional requirements. Accordingly, the enactment is void. *Harris*, 192 Kan. at 200.

Finally, KP&L urges us to adopt a more liberal rule similar to one adopted by the Florida Supreme Court in *Gwynn v. Hardee*, 92 Fla. 543, 110 So. 343 (1926). In *Gwynn*, the Governor of Florida signed a bill that inadvertently contained a section which had been amended out of the bill prior to passage by the legislature. The Florida Supreme Court severed that portion of the bill that had been amended out by the legislature and explained that "the genuine provisions [of the bill] are distinct from and independent of the spurious [section amended out so]. . . that they will not be affected by the latter." 92 Fla. at 555. *Gwynn* concluded that "[t]o declare the entire act invalid because it contains the spurious matter would frustrate the legislative will, not because of an unconstitutional act or omission of the Legislature, but because by a clerical error a spurious provision was inserted in the bill after its passage." 92 Fla. at 558.

The adoption of *Gwynn* would require us to overrule *Harris*. We rely on *Harris* in disposing of the issue before us. In *Harris* we noted:

"Errors plainly clerical in character, mere inadvertences of terminology, and other similar inaccuracies or deficiencies will be disregarded or corrected

where the intention of the legislature is plain and unmistakable. But the court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct.' [*Russell v. Cogswell,* 151 Kan. 793, 795, 101 P.2d 361 (1940)].

. . . .

"The rule is somewhat more limited than asserted by counsel. Generally speaking, courts have no right to correct errors made in an enrolled bill and they will ordinarily take the latter as they find it, and if not constitutionally enacted, will declare it void. [Citations omitted.] Nearly all the cases holding that errors and mistakes may be corrected deal with errors and mistakes apparent on the face of the legislative enactment, either standing by itself or in connection with other well-known facts. Very few of such cases deal with the question whether the procedural steps in enacting the law have been followed; that is, whether the act signed by the governor was the act passed by the legislature. In other words, such cases deal in the main with the construction of the legislative enactment rather than the validity of the procedure or steps of its enactment. [Citation omitted.] In *State v. Hill,* 189 Kan. 403, 369 P.2d 365, 91 A.L.R. 2d 750, it was held that the construction of a statute, the function of a court to ascertain its scope and meaning, is not to be confused with the duty of determining its validity when measured by constitutional guaranties." 192 Kan. at 196.

Finally, plaintiff raises a second alternative issue, arguing that if the trial court properly applied OPLA, it should have instructed the jury concerning K.S.A. 66-1706(c). Because we hold that OPLA is unconstitutional and the trial court improperly applied it to this case, we need not reach plaintiff's alternative issue.

Reversed and remanded for further proceedings consistent with this opinion.