Gary A. Anderson, Bond Counsel City of Olathe 2405 Grand Boulevard, Suite 1100 Kansas City, Missouri 64108-2521
Dear Mr. Anderson:
As bond counsel for the City of Olathe, you request our opinion regarding certain provisions of the Transportation Development District Act.[1] Specifically, you ask whether the transportation development district sales tax authorized by the Act may be collected prior to issuance of bonds, potentially allowing for collection of the sales tax moneys for a period exceeding 22 years.
The Transportation Development District Act confers powers that "are for public purposes, economic development purposes or purposes for which public money may be expended."[2] The Act provides a method whereby a municipality may create a transportation development district (TDD) for the purpose of financing projects.[3] Creation of a TDD is initiated by the owners of a land area when they submit to a municipality's[4] governing body a petition requesting the creation of a TDD. The petition must include information regarding the general nature of the proposed project,[5]
the maximum cost of the project, the proposed method of financing, and the proposed amount of TDD sales tax or method of assessment.[6] The total cost of any project may be paid through special assessments imposed in the district, through a pledge of all of the revenue received from the TDD sales tax, or through any other funds appropriated by the municipality.[7] If the project is financed only by assessments, the municipality may proceed without notice or a hearing and establish the TDD through adoption and publication of an appropriate resolution or ordinance.[8] If the petition proposes levying of a TDD sales tax, the municipality is required to "adopt a resolution stating its intention to levy such [TDD] sales tax, and give notice of the public hearing on the advisability of creating the district, its intention to levy such [TDD] sales tax and financing the project."[9]
 "Following the hearing or any continuation thereof, the governing body may create the district, authorize the project, approve the maximum cost of the project and the boundaries of the district, levy the transportation development district sales tax and approve the method of financing by adoption of the appropriate ordinance or resolution. Such ordinance or resolution shall become effective upon publication once in a newspaper."[10]
The state director of taxation will begin collecting the sales tax "upon receipt of a certified copy of the resolution or ordinance authorizing the levy of the transportation development district sales tax."[11] The TDD sales tax moneys received by the municipality are to be deposited in a fund created pursuant to K.S.A. 2005 Supp. 12-17,148,[12] which fund also holds the proceeds from the sale of bonds and other moneys appropriated by the governing body.[13] "Upon payment of the principal and interest on the bonds, if any, the municipality shall have the authority to spend any moneys remaining in the fund for the purposes for which local sales tax receipts may be spent."[14]
 "(a) Any municipality may issue bonds in one or more series to finance the undertaking of any project in accordance with the provisions of this act. Such bonds shall be made payable, both as to principal and interest solely from a pledge of the [assessments, the transportation development district sales tax and/or any other funds appropriated by the municipality]. The municipality may pledge such revenue to the repayment of such bonds prior to, simultaneously with or subsequent to the issuance of such bonds. . . .
 "(b) Bonds issued pursuant to subsection (a) shall not be general obligations of the municipality, give rise to a charge against its general credit or taxing powers, or be payable out of any funds or properties other than any of those set forth in subsection (a) and such bonds shall so state on their face.
 "(c) Bonds issued pursuant to subsection (a) shall be special obligations of the municipality and are declared to be negotiable instruments. Such bonds shall be executed by the authorized representatives of the municipality and sealed with the corporate seal of the municipality. . . . Such bonds shall contain the following recitals: The authority under which such bonds are issued; that such bonds are in conformity with the provisions, restrictions and limitations thereof; and that such bonds and the interest thereon are to be paid from the money and revenue received as provided in subsection (a)[. S]uch bonds shall mature in no more than 22 years."[15]
Any TDD sales tax imposed under K.S.A. 2005 Supp. 12-17,145
"shall expire no later than the date the bonds issued to finance such project or refunding bonds issued therefore shall mature."[16]
In determining whether a transportation development district sales tax may be levied for more than 22 years, the rules of statutory construction are followed.
 "The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.
 "Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it.
 . . . .
 "In construing statutes and determining legislative intent, several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible."[17]
By the plain and unambiguous language of the Act, the governing body of a municipality may levy the TDD sales tax by adoption and publication of an appropriate ordinance or resolution and the state director of taxation is obligated to begin collecting the TDD sales tax upon receipt of a certified copy of that ordinance or resolution. No additional steps are required before the TDD sales tax is levied. The TDD sales tax proceeds may be pledged to the repayment of bonds "prior to, simultaneously with or subsequent to the issuance of such bonds." The Act does not require that a TDD sales tax be levied only in conjunction with the issuance of bonds. If a municipality does issue bonds to provide financing for a project and pledges the TDD sales tax for payment of the bonds, the bonds must mature in no more than 22 years, with the TDD sales tax expiring upon maturity of the bonds. The 22-year limitation regards the time in which bonds must mature rather than the time during which the TDD sales tax may be levied. A municipality may levy TDD sales tax prior to issuance of bonds, ostensibly allowing collection of the TDD sales tax for a period exceeding 22 years.
Sincerely,
 Phill Kline Attorney General
 Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] K.S.A. 2005 Supp. 12-17,140 et seq.
[2] K.S.A. 2005 Supp. 12-17,140(b).
[3] K.S.A. 2005 Supp. 12-17,142(a).
[4] "`Municipality' means any city or county." K.S.A. 2005 Supp. 12-17,141(h).
[5] "Project" is defined in K.S.A. 2005 Supp. 12-17,141(k) as "any project or undertaking, whether within or without the district, to improve, construct, reconstruct, maintain, restore, replace, renew, repair, install, furnish, equip or extend any bridge, street, road, highway access road, interchange, intersection, signing, signalization, parking lot, bus stop, station, garage, terminal, hangar, shelter, rest area, dock, wharf, lake or river port, airport, railroad, light rail or other mass transit facility or any other transportation related project or infrastructure including, but not limited to, utility relocation; sanitary and storm sewers and lift stations; drainage conduits, channels and levees; street light fixtures, connection and facilities; underground gas, water, heating and electrical services and connections located within or without the public right-of-way; sidewalks and pedestrian underpasses or overpasses; and water main and extensions."
[6] K.S.A. 2005 Supp. 12-17,142(a).
[7] K.S.A. 2005 Supp. 12-17,147.
[8] K.S.A. 2005 Supp. 12-17,142(c).
[9] K.S.A. 2005 Supp. 12-17,144(a).
[10] K.S.A. 2005 Supp. 12-17,144(b).
[11] K.S.A. 2005 Supp. 12-17,145(b).
[12] Id.
[13] K.S.A. 2005 Supp. 12-17,148.
[14] Id. (emphasis added).
[15] K.S.A. 2005 Supp. 12-17,149 (emphasis added). The last provision of the statute appears to contain a typographical error that occurred in the bill adopted by the Legislature and carried through the publication of the statute. "Errors plainly clerical in character, mere inadvertences of terminology, and other similar inaccuracies and deficiencies will be disregarded or corrected where the intention of the legislature is plain and unmistakable." Kenyon v. Kansas Power Light Co.,254 Kan. 287, 292-93 (1993), quoting Harris v. Shanahan, 192 Kan. 183,196 (1963). We believe that the provision was intended to include the punctuation as contained in the brackets.
[16] K.S.A. 2005 Supp. 12-17,145(a).
[17] Pieren-Abbott v. Kansas Department of Revenue,279 Kan. 83, 88-89 (2005) (internal citations and quotation marks omitted).